Case 37.—PROSECUTION OF W. P. BRIGHT, INDICTED FOR
MANSLAUGHTER.—April 13.

## Bright v. Commonwealth.

Appeal from Marion Circuit Court.

I. H. THURMAN, Circuit Judge.

Defendant convicted and appeals.    Affirmed.

Homicide—Dying Declarations—Proof of by Widow of Deceased—
Competency—Witnesses—Infant Twelve Years Old—Capacity
—Competency—Religious Belief.

1. Homicide—Dying Declarations—Proof of by Widow of De-
ceased—Competency—On the trial of one for homicide the
widow of the deceased is a competent witness to prove the
dying declarations of her deceased husband made under a
sense of impending death.

2. Witnesses—Infant Twelve Years of Age—Capacity—Compe-
tency—A boy twelve years of age, while not able to define
the legal obligation of an oath, but did know that by being
sworn he was required to tell the truth and would be pun-
ished for it if he did not do so, is a competent witness on the
trial of one for homicide.

3. Religious Belief—Whether one's religious training has been so
developed that he comprehended his responsibility to God for
lying is not material as affecting his competency as a witness
in a court of justice.  His belief or unbelief in deity may affect
his credibility, but not his competency as a witness.

BEN SPAULDING, W. H. SWEENEY and S. RUSSELL for ap-
pellant.

1. We submit that the wife of the dead man, over appellant's
objection, was permitted to state to the jury that her husband,
James Stayton, said to her: "Perry and Will have killed me."
This statement was made some little time after the fight, and
we think proves no fact and is simply a conclusion of decedent,
and was highly prejudicial to appellant.

2. The evidence shows that the fight was brought and pushed
by deceased with such violence that appellant's escape with his
own life required him to do the acts that resulted in the death
of Stayton.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellee.

1. The test of the competency of a child's testimony ·is his ability to realize the motive and effect of an oath.  It is a matter of discretion with the trial court, and it is for only a great abuse of this discretion that the appellate court will reverse.

2. The wife of the dead man was competent to testify as to the dying declarations of her husband.  (Arnett v. Commonwealth, 114 Ky., 593.)

3. There is nothing in the record to show that one of the jurors was not a housekeeper.

4. There is nothing to show the verdict was made by lot.

5. There is no rule in our practice requiring the plaintiff to read his cross-examination of witnesses who gave depositions for defendant.

6. On the whole case we submit that the defendant had a fair and impartial trial, and there was no error in the admission or rejection of testimony which was prejudicial to the rights of appellant.

OPINION BY JUDGE O'REAR—Affirming.

Appellant appeals from a judgment upon a verdict convicting him of manslaughter.  There were no objections to the instructions of the court to the jury, nor do they appear to us to have been objectionable from appellant's point of interest.  The instructions offered by appellant, and rejected by the court, except one to the jury to peremptorily find him not guilty, were embodied in those actually given.  There was evidence of appellant's guilt, and it would therefore have been improper to have given the peremptory instruction.

There are but two questions presented in the brief for appellant, which seem to be the only two relied upon in the grounds for a new trial that are reviewable by this court on the state of the record.  These are questions of evidence.  The first is an objection to the testimony of Mrs. Stayton, the widow of the murdered man.  No eyewitness testified in the case

except appellant. Stayton, whom appellant killed, was stabbed mortally by appellant, and died within a few minutes thereafter. Before his death he stated to his wife that he was dying, and that appellant and his son had killed him. This statement was not admitted as part of the res gestae, as seems to be assumed in argument, but as proof of a dying declaration. That the wounded man was then under a sense of his impending death is evident, as well as that he made the statement to his wife of the manner in which he had received his fatal wounds, in contemplation of that immediate event. We held in the case of Arnett v. Commonwealth, 114 Ky., 593, 71 S. W., 635; 24 Ky. Law Rep., 1440, that the wife of a declarant was a competent witness to prove his dying declaration under such circumstances.

The other question is as to the competency of the witness, Tommy Ewing, a lad 12 years of age. The point is made that he was too immature to know the binding obligation of an oath, and that consequently he was incompetent as a witness. By the Civil Code, every person is competent to testify for himself or another, subject to certain exceptions not material in this inquiry, unless he be found by the court incapable of understanding the facts concerning which his testimony is offered. The Criminal Code contains no such provision. Indeed, it is silent on this point, which leaves in force in this State as to criminal prosecutions the common law, as it affects the competency of witnesses. On the subject of interest, and the like, the Legislature has made certain changes in this respect as to such competency, but these changes do not touch upon the question of understanding or religious or moral comprehension of the witness. In Greenleaf on Evidence, sec. 367, it is said that if a child offered as a witness appears

to have sufficient natural intelligence ,and to have been so instructed as to comprehend the nature and effect of an oath, he is admitted to testify whatever his age may be.  The witness stated that he realized that it was wrong to tell a lie; that, while he did not understand what an oath meant, yet he knew that by being sworn he was required to tell the truth: and that if he did not do so he would be punished for it, but he did not know how, nor by whom.  As to a future punishment, he naively said that "the bad man would get him if he told a lie."  His evidence was clear, and showed mental capacity, understanding, and memory sufficient to qualify him.  It appears that he was conscious that the oath bound him to speak the truth, and he knew the difference between telling the truth and telling a lie.  It did not disqualify him as a witness that he was not able to define the legal obligation of an oath.  Whether his religious training had been so developed that he comprehended his responsibility to God for lying was not made clear, nor was it material as affecting his competency.  In Bush v. Commonwealth, 80 Ky., 244; 3 Ky. Law Rep., 740, it was held that, under the Constitution of this State, the civil capacity belonging to or enjoyed by citizens generally shall not be taken from or denied to any citizen on account of his opinions in regard to religious matters.  Otherwise the constitutional guaranty that "the civil rights, privileges or capacities of any citizen shall in nowise be diminished or enlarged on account of his religion" would be violated when one class of citizens is held to have civil capacity to testify in a court of justice because they entertained a certain opinion in regard to religion, while another class is denied to possess that capacity because they do not conform to a prescribed belief.  "Free governments deal with the acts

of the citizen, and not with his thoughts.'' If disbelief in Deity does not disqualify one from being a witness here, unbelief could not do so. The question becomes one of credibility and not of competency.

We perceive no error in the record, and the judgment is therefore affirmed.