[Crim. No. 748. Second Appellate District, Division Two.—May 24, 1921.]

## THE PEOPLE, Respondent, v. EARL F. DELANEY, Appellant.

[1] EVIDENCE—WITNESSES—CHILD UNDER TEN YEARS OF AGE—EX-TREME YOUTHFULNESS — INSUFFICIENT DISQUALIFICATION. — Under subdivision 2 of section 1880 of the Code of Civil Procedure, which provides that children under the age of ten years, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly, cannot be witnesses, the extreme youthfulness of a child is not *per se* sufficient to exclude him from the witness-stand.

[2] ID.—DETERMINATION OF COMPETENCY—APPEARANCE AND CONDUCT. The competency of a child under the age of ten years to testify as a witness is to be determined by the trial judge not alone from his answers to the questions propounded to him, but to a large extent from his appearance and conduct.

[3] ID.—DISCRETION—APPEAL.—Because the trial judge has an opportunity to observe the child and listen to his manner of answering questions, the question as to competency rests peculiarly in his discretion, and it is only when there has been a clear abuse of discretion or a manifest misapprehension of some legal principle that his decision will be reversed.

[4] ID.—UNDERSTANDING OF OATH — NONESSENTIAL — CONSTITUTIONAL LAW.—Under article I, section 4, of the constitution and section 1879 of the Code of Civil Procedure, which provide that no person may be excluded from the witness-stand on account of his opinions on matters of religious belief, the competency of a child as a witness does not depend upon his understanding that the force of an oath is rooted in sanctions of a religious character.

---

1. Competency of children as witnesses, notes, 124 Am. St. Rep. 295; 14 Ann. Cas. 3; Ann. Cas. 1916C, 424.

Competency of children as witnesses as dependent on age, note, 19 L. R. A. 605.

[5] ID.—RULING AS TO COMPETENCY—CONCLUSIVENESS UPON JURY.— The jury is bound by the ruling of the trial judge as to the competency of a child under the age of ten years to be a witness, and they may not reject his testimony on such ground.

[6] ID.—COMMISSION OF LEWD ACT UPON BODY OF CHILD—COMPETENCY OF WITNESS—REFUSAL OF EXAMINATION BY COUNSEL—REVERSIBLE ERROR.—While a party objecting to the competency of a child under ten years of age as a witness may not in all cases and as a matter of strict legal right supplement the trial judge's examination with questions of his own, it was reversible error in a prosecution for lewd and lascivious conduct upon the body of a child about four years of age to refuse to permit defendant's counsel to question the child on his *voir dire*, where the judge's examination was meager to a degree and too restricted to determine the child's intelligence, and the evidence was insufficient to warrant a conviction without the child's testimony.

[7] ID. — TESTS FOR DETERMINATION OF COMPETENCY — MANNER OF PROOF.—Under subdivision 2 of section 1880 of the Code of Civil Procedure, which provides that children under the age of ten years who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly, cannot be witnesses, the two separate tests are satisfied through the ability of the child to narrate the facts, considering the accompanying physical manifestations, but the ability to receive the just impressions must relate to the date of the occurrences, and the ability to relate the facts to the date upon which the child is offered as a witness. (Concurring opinion.)

[8] ID.—IMPRESSION OF FACTS OF CRIMINAL OFFENSE—TESTIMONY AT PRELIMINARY EXAMINATION.—In determining the ability of a child under the age of ten years to receive just impressions of the facts of a criminal offense, the testimony given by the child at the preliminary examination is a better indication of such ability than the narration on the *voir dire* at the trial. (Concurring opinion.)

[9] ID.—ABILITY TO RELATE FACTS—EVIDENCE.—The ability to relate the facts truly depends upon the child's natural power of narration, exercised through his unprompted relation of such facts, and not upon a factitious ability to recite what he may have heard, with frequent repetition, from others. (Concurring opinion.)

[10] ID.—SUBSEQUENT DISCOVERY OF INCOMPETENCY—DUTY OF COURT. It is the duty of a judge, at any time after he has determined that a child is competent as a witness, to change his mind upon due occasion, remove the child from the witness-stand and instruct the jury to disregard his testimony. (Concurring opinion.)

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

George H. Shreve and Cooper, Collings & Shreve for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

FINLAYSON, P. J.—Defendant was convicted under an information charging him with lewd and lascivious conduct upon the body of a boy. At the time of the offense, the child victim was not quite four years old; at the date of the trial he had reached the age of about four years and two months. Defendant appeals from the judgment and an order denying his motion for a new trial.

It is objected that the court erred in permitting the boy to testify as a witness in the case, the claim being that, by reason of his immature years, he was incompetent under section 1880 of the Code of Civil Procedure, subsection 2 whereof provides that ''children under the age of ten years, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly'' cannot be witnesses.

The examination of the boy upon his *voir dire,* conducted by the court without the assistance of counsel, was meager to a degree. The record shows that the boy was called to the witness-stand by the prosecution, and that the following then ensued: ''Q. By the Court: Do you know me? You do not know me, do you? What is your name? A. My name is Junior Seiler. Q. How old are you? A. I am four years old. Q. Have you ever been in court before? A. Yes. [Referring, evidently, to the preliminary examination of defendant before the committing magistrate.] Q. Do you go to Sunday-school? A. Yes. Q. Whom do you live with? A. With my mother. Q. Does your mother teach you to tell the truth? A. Yes, sir. Q. What happens to boys who do not tell the truth? What do they do to boys who do not tell the truth? A. Put them in jail. Q. Have you ever been in jail yet? A. No. Q. Do you know what it is to tell the truth? A. M'h'm. Mr. Shreve: If your Honor please, before your Honor finishes, I would like to have an opportunity of asking the child some ques-

tions also. The Court: No, I think this is a matter for the court. Mr. Shreve: It is a rather serious matter to undertake to try to let a child like that prove the *corpus delicti.* The Court: It is a very serious matter to have a charge of this kind investigated at all. The Witness: Where is mother, Daddy? The Court: If we will let you tell your story—look here, little boy. What is your name? A. Junior Seiler. Q. If we let you tell your story here, will you tell us what is true? A. M'h'm. The Court: I think I will let the witness be sworn. Mr. Shreve: We object to the witness being sworn and testifying in the case on the ground he has shown himself disqualified, and at this time we will request the court to give us permission to further examine the child with reference to his qualifications. The Court: No, that is a matter for the court. Mr. Shreve: And we submit to the court that the child is incompetent to testify under the section of the Code of Civil Procedure. The Court: Swear him. Can you stand up? (The usual oath was then repeated to the witness by the clerk.) Mr. Shreve: Let the record show that the child stands mute, please. Q. By the Court: Do you promise that what you will tell here in answer to questions that are asked you shall be the truth. A. The Witness: M'h'm.''

If the learned trial judge erred in holding that the child was competent to testify as a witness in the case, it was because he not only refused defendant's counsel the privilege of examining the boy on his *voir dire,* but so circumscribed his own examination that he failed to bring out any fact tending to show the strength of the child's memory or ability accurately to recall past occurrences. [1] The child's extreme youthfulness was not, *per se,* sufficient to exclude him from the witness-stand. There is no arbitrary age limit under which the testimony of a child is automatically rejected. It was held in *Brazier's Case,* 1 East P. C. 443, 1 Leach C. C. 199, upon consideration by twelve judges, that there is no determinate age at which the testimony of a child might be admitted or rejected. Under that decision a child only five years of age was held a competent witness. The requirement of our statute is not one of age but of understanding. A witness who has reached the age of ten years is presumed, *prima facie,* to be competent. If below that age, he still is competent to testify unless it is

made to "appear" to the trial judge that the child is "incapable of receiving just impressions of the facts" respecting which he is to be examined, or that he is incapable of relating the facts truly. (*People* v. *Dunlop*, 27 Cal. App. 464, 465, [150 Pac. 389]; *People* v. *Swist*, 136 Cal. 522, 523, [69 Pac. 223].)

[2] If the child is under ten years of age and his competency to testify is, for that reason, challenged, the strength of his mental faculties and his power to understand and appreciate his moral duty to speak the truth is to be determined by an inquiry the purpose of which is to advise the trial judge. The intelligence of the child is to be determined not alone from his answers to the questions propounded to him, but, to a large extent, from his appearance and conduct while in the presence of the court.

[3] Because the trial judge has an opportunity to observe the child and listen to his manner of answering questions, the question as to competency rests peculiarly in his discretion. To so great a degree does it rest in the trial judge's discretion that it has been said that "in most cases it would hardly be one which could be reviewed." (*People* v. *Dunlop, supra.*) It is only when there has been a clear abuse of discretion or a manifest misapprehension of some legal principle that the trial judge's decision will be reversed.

[4] Appellant's argument against the admissibility of the testimony of any child as young as was this boy is based upon the assumption that it is essential that it should be made to appear, not only that the child understands the nature and force of an oath, but that his sense of the obligatory force of an oath is rooted in sanctions of a religious character. This may have been the rule at common law and under the statutes of some states. Such, however, is not now the rule under the constitution and statutes of this state. All that our code requires is that it shall appear to the trial judge that the child's mentality is such that he is capable of receiving just impressions of the facts concerning which he is to testify and of relating them truly. It was said by Mr. Justice Harrison in the *Matter of Johnson,* 98 Cal. 549, [21 L. R. A. 380, 33 Pac. 460], by way of *obiter,* it is true, that the rule which formerly obtained in England that, as the child could not be exam-

ined except under oath, its evidence was excluded unless it understood the nature of an oath, does not obtain in this state. But even if it be necessary to show that the child understands the nature of the oath that may be administered to him if he shall become a witness, nevertheless it is not necessary to show that he entertains any particular theological belief, such, for example, as a belief in a Supreme Being who punishes the wrongdoer here or hereafter. No person, child or adult, may be excluded from the witness-stand on account of his opinions on matters of religious belief. (Const., art. I, sec. 4; Code Civ. Proc., sec. 1879.) It is enough that the child possesses a sense of moral responsibility. In the instant case, so far as the child's sense of moral responsibility is concerned, it was enough that his mother, as the boy told the trial judge, had taught him to tell the truth, and that he thought that little boys who do not tell the truth would be punished by being put in jail. Without doubt, he had no comprehensive conception of the nature of that kind of punishment; but it is sufficient that he understood that some, even if unknown, evil would befall him should he depart from the truth. A child who understands that he will be punished on earth is competent, although he know nothing of punishment after death. (*Sancedo* v. *State* (Tex. App.), 69 S. W. 142; *Bright* v. *Commonwealth,* 120 Ky. 298, [117 Am. St. Rep. 590, 86 S. W. 527].) As said by Mr. Wigmore, "a child's inclination to tell the truth or the opposite is apt to be more a matter of instinct and of previous training and surroundings than of a conscious reflection upon the prospects of a future state." (3 Wigmore on Evidence, pp. 2358, 2359.) For these reasons we think that, to qualify a child under ten years of age, upon the score of his moral responsibility, it is sufficient that he understands that it is his duty to tell the truth and that he will somehow be punished if he does not. The rule is thus stated in Cyc.: "It is held sufficient to qualify the child that he understands the difference between truth and falsehood, and his duty to tell the truth, and that he will be punished if he testifies falsely, although he does not understand the legal nature of an oath or appreciate the formality of taking it, as, from a legal standpoint, one who has an adequate sense of the impropriety of falsehood understands the nature of an oath, although

not able to define it.'' (40 Cyc. 2204.) Appellant cites
the case of *State* v. *Michael,* 37 W. Va. 565, [19 L. R. A.
605, 16 S. E. 803]. There the court proceeded upon the
theory that the effect of an oath on the conscience of the
child should arise from religious sentiments of a permanent
nature. This, as we have seen, is contrary to the constitu-
tion and statutes of this state. With us, as we have said,
intelligence and not belief is the true test. The constitu-
tional guaranty that no person shall be rendered incompetent
to be a witness ''on account of his opinions on matters of
religious belief'' would be violated if adults were held to
have civil capacity to testify in a court of justice, though
entertaining no belief in a Supreme Being or a future state
of rewards and punishments, and the priviledge denied to
a child possessing no opinion conforming to some prescribed
theological belief. ''Free governments deal with the acts
of the citizen, and not with his thoughts.''

[5] Where, as here, the child is examined on his *voir
dire* before being sworn as a witness and after his capacity
to testify has been directly challenged by one of the par-
ties, his *capacity* is not to be questioned by the jury after
the trial judge has ruled against the objection thereto.
The jurors, as triers of the credibility and persuasive suf-
ficiency of all evidence which is admitted for their con-
sideration, may pass upon the weight to be given to the
child's evidence, and, if they conclude that it is inherently
improbable, may disbelieve it; but the judge having deter-
mined the capacity of the witness, by applying the rules
of law to the facts found by himself, the witness stands
before the jury untrammeled by any question as to his
qualification. If, therefore, they reject his testimony, it
should be merely because, all things considered, they do
not believe him, and not because they find him lacking by
force of the law's definition of his competency. With his
*competency* the jury has nothing to do. (1 Wigmore on Evi-
dence, secs. 486, 487; vol. 4, sec. 2550.)

We come now to the most difficult aspect of the question
here presented—the exceedingly limited nature of the trial
judge's examination of the boy and his peremptory refusal
to permit appellant's counsel to ask any question while the
boy was being examined on his *voir dire* for the purpose
of adducing answers that might shed light upon his com-

petency, i. e., his ability to receive just impressions of the facts respecting which he was expected to testify and to relate them truly. We purposely have given a somewhat extended consideration of the general principles applicable to the determination of a child's capacity to testify, in order to show, not only the wide latitude of discretion with which the trial judge is vested when passing upon the competency of a child witness, but the effect that an abuse of that discretion may have on the rights of the party objecting to the child's competency.

The author of this opinion is not prepared to say that, in all cases, counsel for the objecting party may examine the child on its *voir dire* as a matter of strict legal right. "The mode of eliciting and determining by examination the fact of competency is left to the sound discretion of the judge." (*Williams* v. *State*, 12 Tex. App. 137.) Mr. Wharton says: "The preliminary examination thus requisite is usually undertaken exclusively by the court, and it is said that it will require a strong case to sustain a reversal of the ruling of the court examining such a witness." (Wharton on Evidence, sec. 368.) See the reference to *Brazier's Case* in *People* v. *Bernal,* 10 Cal. 67. In *Carter* v. *State,* 63 Ala. 52, [35 Am. Rep. 4], it was said that "when a child of tender years is produced as a witness, it is the duty of the presiding judge to examine him or her, without the interference of counsel further than the judge may choose to allow, in regard to the obligations of the witness' oath." Mr. Wigmore says: "In this inquiry, on the one hand, the judge is not bound by the ordinary rules of evidence applicable to evidence offered to the jury; and, in particular, he need not permit cross-examination of witnesses called to prove or disprove another's qualifications." (1 Wigmore on Evidence, sec. 487.) But this same eminent law-writer, in a later section (vol. 3, sec. 1820), says: "The examination of a child, however, is made usually by the judge; though either counsel has of course the *right* to supplement it by questions tending to bring out whatever may be in favor of his contention." (Italics ours.) And in a footnote on page 2355 appears the following: "In *Hughes* v. *Detroit etc. R. Co.,* 65 Mich. 10, [31 N. W. 603], it was said that the trial court must himself make the ex-

amination, and not leave it to counsel; *but this seems unsound.*" (Italics ours.)

[6] Without undertaking to decide whether the objecting party may in all cases, and as a matter of strict legal right, supplement the trial judge's examination with questions of his own, we are satisfied that in the instant case the refusal to permit defendant's counsel to question the boy on his *voir dire* was clearly an abuse of discretion, so prejudicial to appellant that a reversal must ensue. It may well be that if the examination as conducted by the trial court had taken a wider range, as it should, its decision of the matter would have been final, even though defendant's counsel were denied the right to propound questions to the boy on the *voir dire*.

The restricted examination conducted by the court was limited to such narrow confines that it barely sufficed to develop the following: In reply to the court's questions, the boy gave his name and age, stated that he had been in court before (referring, we assume, to the preliminary examination before the justice of the peace); that he attended Sunday-school; that he lived with his mother, who, he said, had taught him to tell the truth, and that he thought that boys who do not tell the truth would be put in jail. This is practically all that was developed by the court's examination, except the further fact that the child seemingly failed to grasp the purport of some of the judge's questions. While it doubtless was not necessary to interrogate the child respecting the specific facts as to which he was later to be called to testify, we think that a due regard for the rights of the accused demanded either that the court's examination should have covered a wider range or that counsel should have been permitted to put to the boy such questions as might further develop his ability to relate truly the facts respecting which he was called to give evidence. The acts as to which he was expected to testify were of such a character that the author of this opinion inclines to the view that the trial judge, from the boy's apparent age and his general appearance while being examined on his *voir dire,* was justified in assuming that, if the acts were committed as charged against defendant, the boy was capable, at the time of their commission, of receiving just and accurate mental impressions of the facts. And the author of this opinion is

inclined to the view that the facts developed by the trial judge's examination justified the conclusion that, in so far as the boy still retained true mental pictures of what had occurred, unaffected by the suggestions of others, he would endeavor honestly to relate all that he remembered. But the code's test of qualification requires something more than a truthful disposition and the ability to receive just mental impressions of objective facts. The requirement that the child shall be able to truly relate the impressions that he may have received implies, not alone a truth-telling disposition, but a memory sufficiently strong and retentive to be able to recollect faithfully the objective facts or the mental impressions originally created thereby. There is nothing in the trial court's examination that tends to disclose the strength or weakness of the child's power of recollection. The trial was had three and a half months after the occurrences that led to the filing of the information against appellant. Meanwhile the boy undoubtedly had heard his parents talk about the case and its distressing facts. The force of suggestion, always strong, is particularly potent with the impressionable and plastic mind of childhood. We have no reason to believe that either parent consciously and willfully intended to influence the child's testimony. But without intending any such result, the repetition of supposed facts in the presence of a child often creates a mental impression or concept that has no objective reality in any actually existing fact. Before being permitted to testify as a witness in the case, the child should have been asked some question or questions having a tendency to disclose the strength or weakness of his recollection—his ability to retain, for three months or more, and uninfluenced by the unconscious effect of suggestion, a clear and distinct mental picture of what happened at the time when, it is claimed, he and the defendant were together. Such line of questioning was neither pursued by the court nor permitted to counsel. That such questioning would probably have made manifest the boy's inability accurately to recall and thus relate, at the date of the trial, exactly what did happen three and a half months previously, is, we think, sufficiently disclosed by what occurred after the child was sworn as a witness in the case. Not only did the boy, on cross-examination, testify that he had been told by his mother to say that

defendant had done certain things, but his testimony before
the committing magistrate, given only ten days after the
alleged crime and offered in evidence to impeach his testi-
mony in the superior court, leads to the conclusion either
that his testimony before the committing magistrate was
false or that his power of recollection was so weak that,
when examined as a witness in the superior court, he no
longer retained any independent recollection of what had
happened.   The record here shows that the following oc-
curred on the examination of the child before the commit-
ting magistrate: "The Court: . . . Q. Do you know this
man sitting over there? [Indicating the defendant.]   A.
Yes, sir.  Q. Did that man ever do anything to you?
A. What is your name?   Q. Did this man ever do anything
to you?   A. That man, no.   Q. He didn't ever do anything
to you?   A. No.   The Court: Now, look at that man over
there; do you know him now?   A. Yes, sir.   Q. What did
he do to you?   By the Mother: Tell him the truth.   The
Court: Q. What did this man do to you—anything?   A.
No.   Q. Didn't he do anything to you?   A. No.   Q. Do
you know that man over there?   A. Yes, sir.   Q. What is
his name?   A. I don't know what his name is.   Q. You
don't know what his name is?   A. No.   Q. And you say he
never did anything to you?   A. No.   Q. Do you want to
walk over there and take a look at him?   Come on, you and
I, and we will walk over there, that is a good boy.   [The
court and witness approach the defendant.]   Now, then, is
this the man, do you know him?   A. No.   Q. Did this man
ever do anything to you?   A. No, sir.   Q. . . . Do you
know this man?   A. No.   Q. By Mr. Fitts: Did you ever
see him before?   A. No.   The Court: Did he ever do any-
thing to you?   A. No."   Then, after an interval during
which several questions were asked which have no bearing
on the case: "Q. . . . I want you to look at this man again
and tell me if he ever did anything to you?   A. Yes.
Q. When did you see him?   Do you know when you saw
this man before?   A. In the garage.   Q. By Mr. Fitts:
What happened in the garage?   What took place there?
A. He didn't do anything in there.   Q. Did he do anything
at any place?   A. No."

The conclusion arrived at by the author of this opinion is
that the trial court's examination of the boy on his *voir dire*

was restricted to such a narrow and limited compass that to deny appellant's counsel the privilege of supplementing the court's examination with questions of his own was, under all the circumstances of this case, an abuse of discretion and therefore error. And since without the boy's testimony the evidence does not warrant a conviction, the error was prejudicial and a reversal is necessary.

In holding that, under the circumstances of this case, it was error to deny defendant the privilege of examining the boy on his *voir dire* I do not wish to be understood as holding that either party to an action, always, in every case, and as a matter of strict legal right, may supplement the court's examination of the child. What I do hold is that the court, by its own examination of a child on his *voir dire,* should adduce some fact or facts tending to show that the child's memory is strong enough to enable him to recall such facts as those respecting which he is to testify solely by reason of his own independent power of recollection, or else the privilege of showing the possession or lack of such power of recollection should be accorded counsel. Lacking the ability accurately to recollect past occurrences, the child, though he may have received, at the time of their occurrence, just impressions of the facts respecting which he is called to testify, is not capable of "relating them truly."

Judgment and order reversed.

WORKS, J., Concurring.—I concur in the judgment of reversal and in the reasoning upon which the presiding justice concludes that a reversal should result; but as the question before us is one of great importance, I deem it proper to point out other reasons which, in my opinion, show that the trial judge abused the discretion confided to him under the law regulating the competency of children of tender years to testify.

[7] It is to be observed that, under the terms of subdivision 2, section 1880, of the Code of Civil Procedure, there are two separate tests for a determination of the question whether children under ten years of age may be witnesses. They cannot testify if it appears, first, that they are incapable of receiving just impressions of the facts respecting which they are examined; second, that they are incapable of relating those facts truly. It is worthy of

remark, however, that each of these tests must be satisfied through a medium which is akin to one of them; that is, through the ability of the child to narrate, considering also such physical manifestations as may accompany narration, gestures, play of features, and the other indicia which will always aid in determining mental dullness or alertness. It is the existence of these latter phenomena which principally gives rise to the rule that the competency of children to be witnesses is to be left to the discretion of the trial judge; a rule founded, manifestly, upon sense, and one which, it must be conceded, renders it difficult for a court of review to say, in a given case, that the discretion has been abused.

It is to be noted, also, that, while both tests are to be ascertained through an identical medium, they relate to different periods of time: the first, to the date of the occurrences which are under inquiry, for it is then that "just impressions" are to be received; the second, to the date upon which the child is offered as a witness, for it is then that the capacity for "relating truly" is to be ascertained. Therefore, if a given child shall have made narration of the facts of an occurrence at a time less remote from the time of their happening than is the date of the trial, that narration would be expected better to indicate whether he had received a just impression of the occurrences than would his narration, or his examination on his *voir dire,* at the trial. On the other hand, his examination at the trial would furnish the guide for a determination of the ability truly to relate, provided that a comparison of that examination with the earlier narration would furnish a proper aid to the ascertainment of that test. It is to be remembered that such a comparison is to be made by the court, for the purpose of determining whether the child is competent to be a witness, thus presenting a very different question from the one requiring the jury to determine, by comparison, whether statements made in an earlier narration are so variant from his testimony, after he has become a witness, as to make that testimony unworthy of credence.

[8] Taking these principles as a just basis upon which to proceed, if they constitute such a basis, what is the situation in the instant case? The preliminary examination of appellant was held ten days after the alleged occurrences from which sprang the charge against him, and the testi-

mony of the child on that examination, set forth in the opinion of the presiding justice, was offered for the purpose of impeaching him as a witness. Aside from that purpose, however, it should have been valuable to the court as solving the question whether the boy was competent as a witness, upon the score of his incapacity, ten days before, to receive a "just impression" of the occurrences of the day, if there were any in which appellant was concerned. Conceding to the trial judge the advantage possessed by him of observing the child, his gestures, his manner, and his expression, it appears to me that his statements made to the magistrate demonstrate that he was disqualified as a witness under the first test provided by the statute. Considering the nature of his answers, it makes no difference what was his demeanor before the trial judge during his examination on his *voir dire,* more than three months later. It is manifest to me that his answers before the magistrate show that his mind was incapable of receiving a just impression of anything that occurred between him and appellant, whatever may have been the nature of the occurrence. He was questioned and requestioned and questioned yet further, and nothing came of it. He was asked ten times, in slightly variant forms, whether appellant had ever done anything to him. The first time he answered with a question to the magistrate, "What is your name?" At all other times, up to and including the eighth, he answered no. The ninth time he answered yes and the tenth he returned again to no. Immediately after he answered yes to the ninth putting of the question, the following transpired: "(By the Court): Q. When did you see him? Do you know when you saw this man before? A. In the garage. Q. By Mr. Fitts: What happened in the garage? What took place there? A. He didn't do anything in there." The tenth putting of the question already mentioned then came in this form: "Did he do anything at any place?" The answer, as already stated, was no. The child was asked five times if he knew appellant. The first three times he answered yes. The fourth putting of the question, with its answer, are thus shown: "Q. Do you want to walk over there and take a look at him? Come on, you and I, and we will walk over there, that is a good boy. [The court and witness approach the defendant.] Now, then, is this the man, do you know

him? A. No.'' To the fifth statement of the question he also answered no. Mr. Fitts then put a kindred question: ''Did you ever see him before?'' The boy answered no.

Upon this evidence it is to be wondered how the committing magistrate ever bound appellant over, as the other evidence at the trial was very slight and of no value whatever without the testimony of the child, and that testimony alone must have been taken to establish the *corpus delicti.* But with the action of the justice of the peace we have nothing to do; and I reiterate the statement that the answers of the boy at the preliminary examination show that he was not qualified as a witness under the first test imposed by the statute.

In developing my views upon the subject of the second test it is necessary to state a few words of the boy's testimony at the trial. He says that appellant unbuttoned one button of his clothes and that ''he sucked on my hand.'' This rather cryptic expression is explained by the testimony of the child's father to the effect that the child had been taught to employ the word ''hand'' in referring to the male organ of generation. The boy also testified that the crime was committed in a garage; and the circumstance is mentioned, with the reminder that he was questioned at the preliminary examination as to what happened in a garage, for the purpose of indicating that on both occasions he had the same event and the same place in mind. A comparison of the two narratives will indicate an amazing difference between them. The variance cannot be accounted for upon the theory that the child's powers of narration had so surprisingly increased during the three months and a half which elapsed between the two events. To what, then, was the change owing? We have the key in certain of the observations of the presiding justice. He says: ''Meanwhile the boy undoubtedly heard his parents talk about the case and its distressing facts. The force of suggestion, always strong, is particularly potent with the impressionable and plastic mind of childhood . . . the repetition of supposed facts in the presence of a child often creates a mental impression or concept that has no objective reality in any actually existing fact.'' The great change in the child's story and in his manner of telling it *must* have been occasioned through the process thus so graphically described. At the

preliminary examination the boy had no story. A quarter of a year later he has one so fully developed that it serves to establish the *corpus delicti* and to fasten a conviction upon the appellant.

[9] The second test prescribed by the statute must contemplate that a child's ability truly "to relate" is to depend upon his *natural* power of narration, exercised through his unprompted relation of facts as to which he has previously acquired a "just impression," and not upon a factitious ability to recite what he may have heard, with frequent repetition, from others, whether their utterances were spoken with design or in complete innocence; and there is no reason to suppose that anything apart from the latter was the case in the present instance.

Conceding that the child was at all times honest, if the idea of dishonesty, in the strict sense, can be thought of in contemplating a child of such tender years in connection with such a matter; conceding that he told the truth on both occasions, as he understood truth, and there appears no reason to assert the contrary; conceding that the testimony before the magistrate did not impeach the witness,— conceding all these things, it is impossible to understand how the child could answer as he did before the magistrate, could then answer as he did at the trial, and yet be said to meet the second requirement of the statute. It seems manifest, to me at least, that he was incapable, at the time of the trial, of truly relating the facts making up an occurrence of three and a half months earlier.

[10] What is said above proceeds upon the theory that it is the duty of a judge, at any time after he has determined that a child is competent as a witness, to change his mind upon due occasion, remove the child from the witness-stand, and instruct the jury to disregard his testimony. It requires no argument to convince that this must be the rule. The trial judge should have taken that course upon the presentation of the child's testimony given at the preliminary examination.

Craig, J., concurred.