# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 23, 2009
NOT TO BE PUBLISHED

𝔖upreme 𝔒ourt of 𝔎entucky

2007-SC-000260-MR

DATE 5/14/09 _Kelly Klaber_ D.C.

FRANK YARNO                                                        APPELLANT


                    ON APPEAL FROM JOHNSON CIRCUIT COURT
V.                  HONORABLE JOHN DAVID PRESTON, JUDGE
                              NO. 06-CR-00110


COMMONWEALTH OF KENTUCKY                                            APPELLEE


               **MEMORANDUM OPINION OF THE COURT**

                          <u>**AFFIRMING**</u>

Between 2004 and 2006, Mildred Mann had partial responsibility for the care of her eight-year-old granddaughter, A.Y. She lived in an apartment building. Her ex-husband, Frank Yarno (hereinafter "Appellant"), lived across the hall from her. Mann and Appellant maintained a cordial relationship. Although they were no longer married, Mann continued to cook, clean, and do laundry for Appellant. Appellant was in poor health and did not work; however, he would often watch A.Y. while Mann was at work or busy doing chores.

On July 26, 2006, A.Y. went across the hall to visit with her grandfather. Mann went to check on them after a while and discovered that they were not in the living room. She opened the door to Appellant's bedroom and saw both Appellant and A.Y. with their undergarments removed. When Mann asked

what they were doing, Appellant answered: "I'm sorry; she was on top of me." When A.Y. moved off of her grandfather, Mann noticed that Appellant had an erection, and A.Y. had "spots" all over her shirt. Mann immediately took A.Y. to Social Services. At trial, A.Y. said that she and her grandfather were "playing doctor" on the date in question, and that it had happened before. She further testified that his "private parts" went inside her "private parts."

Appellant was indicted and charged with two counts of rape in the first degree. Count I referred to the rape occurring on July 26, 2006, and Count II referred to a rape or rapes occurring *before* July 26, 2006. A Johnson County jury convicted Appellant of both counts of first degree rape, sentencing him to fifty (50) years in prison on each count. The sentences were ordered to run consecutively up to the maximum allowed by law, and concurrently thereafter.

Appellant appeals to this Court as a matter of right pursuant to Ky. Const. § 110(2)(b). He claims five grounds of error: (1) that the trial court erred by failing to swear in A.Y. after it found her competent to testify; (2) that the trial court should not have allowed Appellant's recorded statement to police to be played for the jury; (3) that the prosecutor engaged in misconduct during closing arguments; (4) that Appellant was denied due process of law when the trial court denied his motion to strike a juror for cause; and (5) that a directed verdict should have been granted because there was insufficient evidence to support the verdict.

### Failure to Swear in A.Y.

Prior to testifying at trial, A.Y. was asked by the trial judge if she knew where she was. A.Y. responded that she was eight years old, and that she

2

knew she was in court. When asked why she was in court, A.Y. began to respond: "Because my Papaw did something . . . ." The judge interrupted A.Y. and asked if she was there to tell what happened. A.Y. responded in the affirmative. A.Y. was also asked what it meant to tell the truth. She responded: "That you have to tell what happened and you have to tell the right thing." When asked what "the truth" was, A.Y. hesitated and did not immediately respond. The judge stepped in and asked A.Y. if she knew what a lie was. She responded: "A lie is when you don't tell the truth and lie about something." The judge impressed upon A.Y. that it was very important that she tell the truth, and he asked her if she understood. A.Y. responded in the affirmative. When the judge asked A.Y. if she would promise to tell the truth, she said that she would. The judge did not formally administer an oath to A.Y. Appellant did not object that A.Y. was not formally sworn in.

Absent proper objection, we review only for palpable error. RCr 10.26. In order to "[t]o prove palpable error, Appellant must show the probability of a different result or error so fundamental as to threaten his entitlement to due process of law." Brooks v. Commonwealth, 217 S.W.3d 219, 225 (Ky. 2007). On appellate review, our focus is on whether "the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." Martin v. Commonwealth, 207 S.W.3d 1, 5 (Ky. 2006).

Kentucky Rule of Evidence (KRE) 603 provides that "every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." However,

3

we have never required any "magic words." Rather, "the rule is flexible enough to allow a trial judge to accommodate to the religious beliefs or disbeliefs of particular witnesses and to the intellectual immaturity of children or mentally impaired witnesses." See Robert G. Lawson, The Kentucky Evidence Law Handbook, § 3.00[3], p. 220, (4th ed. 2003), citing to United States v. Thai, 29 F.3d 785 (2nd Cir. 1994); and Spigarolo v. Meachum, 934 F.2d 19 (2nd Cir. 1991). Courts in this jurisdiction have long recognized that no particular word or form of oath is necessary as long as the child witness acknowledges that he or she will tell the truth, comprehends the nature of truth, and understands the consequences of lying. Bright v. Commonwealth, 120 Ky. 298, 86 S.W. 527 (1905); Whitaker v. Commonwealth, 297 Ky. 279, 179 S.W.2d 448, 451 (1944). Here, although there was no formal oath, the judge asked questions of the eight-year-old witness that were calculated to awaken her conscience and impress upon her the duty to tell the truth. After asking A.Y. if she would promise to tell the truth, she responded in the affirmative. In fact, the detailed inquisition of a child as to the moral imperative of telling the truth is based upon an assumption that the mere giving of the oath to an infant might not be sufficient. While the more cautionary way might be to do both, we find no error here, much less palpable error.

**Admission of Appellant's Recorded Statement**

Appellant next argues that his taped statement to police was impermissibly admitted in violation of Missouri v. Seibert because the officer engaged in an impermissible "question first" tactic. 542 U.S. 600 (2004). We agree with the Commonwealth that this issue was not preserved for appellate

4

review, nor has Appellant requested palpable error review. Therefore, we do not address this issue. See Dant v. Commonwealth, 258 S.W.3d 12, 21 (Ky. 2008) (holding that an appellate court will not review for palpable error unless requested and briefed by Appellant, absent extreme circumstances).

## Prosecutorial Misconduct

Appellant next argues that the Commonwealth's Attorney made improper statements during closing arguments for the guilt and penalty phases.

His first argument is a "Golden Rule" argument. He alleges that it was improper, during closing arguments for the guilt phase, for the prosecutor to ask the jurors to step into the shoes of the child victim. During this argument, the Commonwealth's Attorney reminded the jury that it was spring break for the Paintsville School District. The Commonwealth's Attorney told jurors that when A.Y. got back from spring break and other children asked her what she had done, she would not be able to say that she had gone to the beach. Instead, he opined, she had to spend her spring break going before thirteen people she had never met before and tell them about the most traumatic thing that had ever happened to her. This allegation of error is preserved for review.

When considering allegations of prosecutorial misconduct, we must determine whether the conduct was of such an egregious nature that the accused is denied his constitutional right of due process of law. Donnelly v. DeChristoforo, 416 U.S. 637 (1974). On appellate review, the reviewing court "must focus on the overall fairness of the trial, and not the culpability of the prosecutor." Slaughter v. Commonwealth, 744 S.W.2d 407, 411-12 (Ky. 1987).

5

As we have previously acknowledged, it is well-settled that broad latitude must be afforded counsel in presenting a case to the jury. Stasel v. Commonwealth, 278 S.W.2d 727, 729 (Ky. 1955). Moreover, opening and closing arguments are not evidence in the case and prosecutors are given considerable leeway in both. Stopher v. Commonwealth, 57 S.W.3d 787, 805-806 (Ky. 2001). Here, the statements made by the Commonwealth did not rise to the level of prosecutorial misconduct. As we stated in Stopher: "In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair." Id. at 805. We do not find that the statements here were so egregious as to render the entire trial fundamentally unfair. Accordingly, we affirm on this ground.

Appellant next alleges that the Commonwealth Attorney's statement to the jury calling for a harsh sentence was improper. During penalty-phase closing arguments, the Commonwealth's Attorney asked the jury: "If we are not going to be zealous in the case of a man who sexually molests and destroys innocence, when can we be harsh? When can we stand for what is right?" The Commonwealth's Attorney then told the jury that he wanted them to look in the mirror the next day and say that they had made "a stand." Although this alleged error was not preserved for review, Appellant has requested palpable error review under RCr 10.26.

We have previously said that a prosecutor cannot cajole or coerce a jury to reach a verdict. Dean v. Commonwealth, 844 S.W.2d 417, 421 (Ky. 1992). However, in Brewer v. Commonwealth, we stated that "a prosecutor may use his closing argument to attempt to 'persuade the jurors [that] the matter

6

should not be dealt with lightly.'" 206 S.W.3d 343, 350 (Ky. 2006), *citing* Harness v. Commonwealth, 475 S.W.2d 485, 490 (Ky. 1971). In <u>Brewer</u>, we found fault with the prosecutor's theme in closing arguments that the jury should "send a message" through its sentence. However, as the error in <u>Brewer</u> was unpreserved, we found that it was not palpable. <u>Id.</u> Likewise here, even if error, the prosecutor suggesting that the jury "make a stand" does not rise to the level of manifest injustice. <u>See</u> <u>Brewer</u>, *supra.* Moreover, as we stated in <u>Young v. Commonwealth</u>, 25 S.W.3d 66, 75 (Ky. 2000):

> Kentucky's sentencing procedures do not give juries absolute sentencing authority. KRS 532.070(1) leaves the final determination regarding sentencing up to the trial court . . . the court may modify that sentence and fix a maximum term within the limits provided . . . . While KRS 532.060 does not insulate all sentencing phase errors from palpable error review, we believe Kentucky's sentencing procedures provide an additional layer of protection from prejudice which we should consider in the context of RCr 10.26 review in this case.

Accordingly, we also do not find the current error palpable due to the additional layer of protection afforded by Kentucky's sentencing procedures.

### Failure to Strike for Cause

Appellant next argues that the trial court erred when it failed to strike venire member Nannie Ward from the panel. Ward ultimately sat on the jury which convicted Appellant.

During voir dire, Ward was asked whether she or any member of her family had ever been accused of sexual abuse. Ward initially answered, "No"; but then said, "Well, I shouldn't say that . . . ." She went on to explain that one of her grandfather's brothers had molested his daughters many years ago. She explained that she did not know them very well, as they were third or fourth

7

cousins, but she recalled that there was a criminal prosecution and that the man was forced to leave the state. Ward explained that she did not know the victims at the time and did not know about the molestation until much later. She explained that it was "not a real close situation." Ward indicated that she could put the experience aside and decide the case, noting that the other incident had occurred thirty to forty years ago.

Defense counsel moved to strike Ward from the jury because she had cousins that had been sexually abused. The Commonwealth pointed out how far removed the situation was. The Court agreed that the situation was far enough removed and declined to strike Ward from the panel.

We have long held that a trial court's decision on whether to strike a prospective juror for cause is reviewed for abuse of discretion. See Shane v. Commonwealth, 243 S.W.3d 336, 338 (Ky. 2007); Pendleton v. Commonwealth, 83 S.W.3d 522 (Ky. 2002). A reviewing court must weigh the probability of prejudice or bias based on the entirety of the juror's responses. Shane, 243 S.W.3d at 338.

RCr 9.36 instructs that a trial judge shall excuse a juror for cause where there is a reasonable basis to believe that the juror cannot be fair and impartial. However, we recognize that the trial court is granted broad discretion to determine whether a prospective juror should be stricken for cause. Mabe v. Commonwealth, 884 S.W.2d 668, 670 (Ky. 1994).

Ward's responses, when viewed as a whole, do not indicate that she was unable to be fair and impartial. We cannot say that the trial judge had no sound legal basis for his ruling. The judge was within his discretion when he

8

found that Ward could be fair and impartial as the incidents of abuse were so far removed from the present day. Further, Ward did not appear to have a close relationship with the victims. In Richardson v. Commonwealth, 161 S.W.3d 327, 330 (Ky. 2005), we held that a juror did not have to be stricken for cause in a sexual abuse case where she herself had been a victim of sexual abuse fourteen years earlier, as she indicated an ability to be fair and impartial. In the present case, Ward indicated that she could put the situation aside and decide the case without bias. Accordingly, we affirm on this ground.

## Sufficiency of the Evidence

We have reviewed Appellant's argument that a directed verdict should have been granted. However, we find Appellant's argument to be without merit. Appellant contends that a directed verdict should have been granted because the child witness A.Y. was unable to specifically state the date and time of Count II of the indictment. As we have previously stated, we find it "wholly unreasonable to expect a child of such tender years to remember specific dates[.]" Garrett v. Commonwealth, 48 S.W.3d 6, 9 (Ky. 2001), *citing* Hampton v. Commonwealth, 666 S.W.2d 737 (Ky. 1984). The Counts in the indictment *were* differentiated, as A.Y. was able to say that one of the rapes occurred on July 26, 2006, and that the other rape(s) occurred at a time previous to July 26, 2006. Indeed, "the evidence was as specific as is usually found in such cases and ample to separately identify the various offenses charged." Hampton, 666 S.W.2d at 740. Accordingly, we affirm on this ground.

9

## Conclusion

The judgment of the Johnson Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Susan Roncarti Lenz
Assistant Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204