Filed 9/26/13  P. v. Asencio CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE EDUARDO ASENCIO,<br><br>    Defendant and Appellant. | 2d Crim. No. B241296<br>(Super. Ct. No. LA069259)<br>(Los Angeles County) |

Jose Eduardo Asencio appeals the judgment entered after a jury convicted him of making a criminal threat (Pen. Code,[1] § 422).  The trial court sentenced him to one year four months in state prison.  Appellant contends (1) the court abused its discretion in finding appellant's minor daughter competent to testify; and (2) trial counsel provided ineffective assistance by failing to present evidence or argument to support a defense of voluntary intoxication.  We affirm.

STATEMENT OF FACTS

On October 25, 2011, appellant and Karem F. were living in an apartment with their five-year-old daughter Marianna.  Appellant saw Karem packing some of her

_____

[1] All further undesignated statutory references are to the Penal Code.

belongings and asked if she was moving in with another man. After Karem answered in the negative, appellant grabbed her and pushed her onto the bed.

Appellant left the apartment later that evening. At about 2:00 a.m., Karem was awakened by appellant pulling "really hard" on her leg. Karem got up and hid her cell phone in the bed to prevent appellant from breaking it, as he had in the past. Appellant smelled of alcohol and called Karem a "cunt," a "slut," and a "whore," then forcefully "head-butt[ed]" her in the face. Marianna, who had been asleep in the bed next to Karem's, woke up and began crying.

Appellant told Karem he had just been talking to a "homie" who was going to give appellant a gun the following day. Appellant repeatedly told Karem she would die if she ever left him. He got a hammer and told Karem he was going to tie her up and tape her mouth. Appellant said he would make Karem watch him hang Marianna from the door frame before hanging Karem and himself. He repeatedly told her, "If you leave tomorrow, you'll die tomorrow." Karem was "scared" and believed appellant would carry out the threat.

Karem called 911 when appellant went to the bathroom. She gave the operator her address and said, "[h]e's gonna want to kill me." Karem kept the line open and hid the phone under her to prevent appellant from seeing it.

Appellant returned from the bathroom and reiterated in a "very calm" voice that he would kill Karem if she left him. The police arrived shortly thereafter and arrested appellant.[2]

Marianna testified that "[m]y dad was slapping my mom, and he said he was going to get a hammer and a gun; and he left the hammer on the T.V., and he was going to get a gun." Marianna heard appellant say "that he was going to hang me in the

---

[2] Karem also testified pursuant to Evidence Code section 1109 regarding two prior acts of domestic violence. One night in January 2010, appellant cut off the vacuum's electrical cord with a knife and told Karem he was going to "hang" and "stab" her. Appellant threw Karem to the ground and began choking her, then put the knife to her neck and said he was going to kill her. During another incident in September 2011, appellant got drunk and "elbowed [Karem] really hard" in the arm. After seeing the bruise he caused, appellant said he was sorry and blamed the incident on his intoxication.

2

door; and then he was going to tie my mom down, and he was going to put tape on my mom's mouth, and he was going to hang her in the bathroom door; and he was going to hang his [*sic*] self."  Marianna drew pictures of the incident that were shown to the jury.

One of the officers who responded to the incident was called by the defense to testify.  The officer did not recall Karem stating that appellant had head-butted her.  On cross-examination, the officer testified that Karem was "hysterical," "crying," and "freaked out" and repeatedly stated, "He's going to kill me."  Appellant's eyes were bloodshot and his breath smelled of alcohol.  Karem told the officer appellant had discovered she was moving out and dating someone else and "grabbed the hammer and told her . . . where he was going to hang her and her daughter, and that then he was going to hang himself.  Then he proceeded to tell her that he had met a gentleman at a liquor store that was going to provide him with a gun, and that when he obtained that gun, he was going to come back and shoot her."

DISCUSSION

I.

*Marianna's Competency to Testify (Evid. Code, § 701, subd. (a))*

Appellant contends the court abused its discretion in finding Marianna competent to testify under Evidence Code section 701.  He claims that Marianna's responses during voir dire indicated she "was unable to distinguish a truth from a lie."  He also asserts the court failed to conduct the requisite inquiry as to whether Marianna understood her duty to tell the truth.

In general, every person, regardless of his or her age, is competent to testify.  (Evid. Code, § 700.)  A person is disqualified to testify only if he or she is "[i]ncapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him" (Evid. Code, § 701, subd. (a)(1)) or "[i]ncapable of understanding the duty of a witness to tell the truth" (*id*. at subd. (a)(2)).  The objecting party bears the burden of establishing lack of competence, and the trial court's determination of the issue will be upheld absent a clear abuse of discretion.  (*People v. Avila* (2006) 38 Cal.4th 491, 589.)

3

During voir dire, Marianna testified it is "good" to tell the truth and "bad" to lie. She also recognized it would be "[a] lie" to say that the prosecutor's red pen was black. Marianna promised to tell the truth and respond, "I don't know" if asked a question to which she did not know the answer. She answered "yes" when asked if everything her mother, teacher, or the judge told her was the truth.

At the conclusion of the hearing, appellant argued that Marianna was not competent to testify because she was unable to distinguish between "what she's heard and what she's been told." The court disagreed and found Marianna was not disqualified under Evidence Code section 701 "in that she is capable of understanding the duty to tell the truth as any witness."

Appellant contends the court abused its discretion in light of Marianna's statements that she would believe anything said by her mother, her teacher, or the judge. Appellant also points out that Marianna went on to testify at trial that she had never told a lie. According to appellant, "[i]f a witness is unable to comprehend that another person is even capable of lying or that she herself has never lied, how can she be relied upon to possess sufficient intelligence to recount her impressions?" Appellant also offers Marianna's negative response to a question whether defense counsel would be lying if he said Marianna like pizza better than ice cream, even though she had previously stated her preference for the latter. Finally, he identifies inconsistencies in Marianna's trial testimony regarding the date of her birth.

None of the highlighted statements renders the court's competency finding an abuse of discretion. Marianna's statement that she trusts what her mother, her teacher, or the judge told her has no bearing on the determination whether she was capable of truthfully and accurately recounting her eyewitness observations. Her trial testimony was not before the court when it made the threshold finding of competence and appellant did not renew his objection.[3] Moreover, any inconsistencies in Marianna's trial testimony

---

**3** Subdivision (b) of Evidence Code section 701 provides that "[i]n any proceeding held outside the presence of a jury, the court may reserve challenges to the competency of a witness until the conclusion of the direct examination of that witness." Here, the court

4

were merely relevant to assess her credibility, not her competency. "Inconsistencies in testimony and a failure to remember aspects of the subject of the testimony . . . do not disqualify a witness. [Citation.] They present questions of credibility for resolution by the trier of fact. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 444-445 (*Mincey*).)

The record belies appellant's assertion that the court failed to establish Marianna understood her moral obligation to tell the truth. In arguing to the contrary, he discusses several older cases that he purports "demonstrate the critical need for the court to inquire of the child witness that they [*sic*] have some minimal understanding of . . . the possible negative consequences that possibly result from telling a lie." (See, e.g., *People v. Carpenter* (1935) 3 Cal.App.2d 746, 748; *People v. Delaney* (1921) 52 Cal.App. 765, 770; *People v. Thourwald* (1920) 46 Cal.App. 261.) Appellant overlooks our Supreme Court's more recent holding that "an actual direct threat of punishment for not telling the truth is *not* a prerequisite for a trial court's determination that a person is competent to be a witness." (*Mincey, supra*, 2 Cal.4th at p. 444, italics added.) Competency is sufficiently demonstrated where the trial court has "ascertained that [the potential witness] could distinguish between truth and falsity, and that she understood she had to tell the truth." (*Id.* at p. 444.) Here, the court emphasized the importance of telling the truth and elicited Marianna's promise that she would do so. Nothing more was required.

II.

*Ineffective Assistance of Counsel*

The court gave a sua sponte instruction on the defense of voluntary intoxication (CALCRIM No. 3426) based on evidence that appellant was under the influence of alcohol when the charged incident took place. Appellant claims his trial counsel provided constitutionally ineffective assistance by failing to present any evidence or argue in support of the defense. We conclude otherwise.

---

was not asked to reserve the challenge to Marianna's testimony, nor did appellant renew his challenge after direct examination had concluded. Appellant thus forfeited his right to claim that Marianna's trial testimony renders the court's ruling an abuse of discretion. (*In re Katrina L.* (1988) 200 Cal.App.3d 1288, 1298.)

"When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986 [pp. 37-38].)

The record does not provide counsel's reasons for declining to present a defense of voluntary intoxication. Nor does the record disclose that counsel lacked a legitimate tactical reason for his lack of action. Counsel argued that appellant did not make any threat against Karem, while a theory of voluntary intoxication would have required counsel to concede that the threat was in fact made. Counsel thus may have made a legitimate tactical decision to refrain from raising inconsistent defenses. (See *People v. Jones* (1991) 53 Cal.3d 1115, 1138 ["The presentation of conflicting defenses is often tactically unwise because it tends to weaken counsel's credibility with the jury"].)

Counsel's purported failure to present a defense of involuntary intoxication was also objectively reasonable because there was scant evidence to support the defense. As the jury was instructed, evidence of appellant's intoxication was relevant only for the limited purpose of determining whether he "acted with the specific intent that his statement be understood as a threat and intended that the threat be communicated to the alleged victim." (CALCRIM No. 3426.) Karem testified that appellant spoke to her in a

"calm" voice when he threatened to kill her, and those threats were detailed and coherent. The responding officer similarly testified that although appellant "appeared intoxicated," he was also "calm." Given the dearth of evidence to support a finding that appellant was intoxicated to the point he was unable to form the specific intent to make a criminal threat against Karem, appellant is also unable to establish a reasonable probability that he would have achieved a more favorable result if counsel had presented a defense of voluntary intoxication. Appellant's claim of ineffective assistance accordingly fails for lack of prejudice. (*People v. Mai, supra*, 57 Cal.4th 986 [pp. 37-38].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7

Martin Larry Herscovitz, Judge

Superior Court County of Los Angeles

_____


Dawn M. Dunbar for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee, Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.