State v. Sykes.

---

THE STATE v. SIDNEY SYKES, Appellant.

Division Two, March 18, 1913.

1. **INSTRUCTIONS: Alibi.** The failure of the trial court to instruct on the defense of alibi is not error warranting reversal where the court's attention was not called to the propriety of such an instruction.

2. ————: **Reasonable Doubt: Unintelligible Statements.** It is not error either to give or to refuse to give, in a criminal case, the usual instruction on reasonable doubt, i. e., that it is "a

substantial doubt . . . and not a mere possibility of the defendant's innocence," and where it is given it is not error to refuse another asked by the defendant upon the same point which is unintelligible.

3. **EVIDENCE: Young Children.** *Held*, that the testimony of two children, who were seven and nine years old, was properly admitted by the trial court in this prosecution for rape.

4. **INSTRUCTIONS: On Point Covered by Others.** It is not error in a criminal trial to refuse to give an instruction asked by defendant upon a point which has already been fully covered by an instruction given by the court.

5. ————: **Rape: Attempt: Evidence.** Where the evidence for the State in a prosecution for rape showed the actual commission of the crime, and there was no evidence tending to show an unsuccessful attempt, an instruction on attempted rape was properly refused.

6. **RAPE: Evidence: Appeal.** The evidence in this prosecution for rape is *held* to be sufficient to support the verdict of guilty.

'Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

AFFIRMED.

*Zach. J. Mitchell* for appellant.

*Elliott W. Major*, Attorney-General, and *Charles G. Revelle*, Assistant Attorney-General, for the State.

ROY, C.—Defendant was convicted of raping Rita Washington, a girl nine years old, and was sentenced to twenty years in the penitentiary. Both parties are negroes. The child lived in St. Louis, but

Rape.

spent the summer with her grandparents, Richard Lewis and wife, at Florissant. The Lewis home had two rooms on the ground floor and one upstairs. Lewis had three sons, two of whom slept at home and worked around in the vicinity. A boy, Richard Jones, seven years old was staying there. Lewis and the defendant had been cutting corn, working in the same fields. Both testified that the defendant quit cutting corn because he was not able to continue doing

so. Lewis did not state what defendant's ailment was. Defendant said he quit because the cutting made his arm sore. On September 14, 1910, Lewis and his wife left home early, he to cut corn, and she to wash at the house of a family in the vicinity. Lewis testified that he told the defendant to stay at home and take care of the children. Defendant on the stand denied that statement.

Defendant testified that a few minutes after Lewis and wife left, he got breakfast and left, and that the two children were the only ones left at home. He testified that he went to Florissant and spent the whole day with John Pope in the shed near a saloon, canning beer, playing cards and shooting craps, occasionally going into the saloon for beer. He stated on the stand that he went back to Lewis's about six-thirty or seven o'clock and that Lewis was then at home.

The stenographer's notes of his evidence on a previous trial were read in evidence showing that he said on the former trial that he left the saloon about three-thirty in the afternoon.

The prosecutrix testified to facts indicating that defendant ravished her forcibly and against her will. She was not able to tell at what time in the day it occurred. She said nothing to anyone until about September 24th, when it developed that she was horribly afflicted with gonorrhoea, as shown by the evidence of the physician who examined her, and of others. She then told that the defendant had mistreated her.

Defendant continued to sleep at Lewis's until he was arrested. On the first trial defendant was convicted, but the verdict was set aside for some error in the proceedings. Defendant testified that he left the saloon in the evening in company with John Pope, John Lewis, Bud Cordell and Tucker Green. None of them testified.

There was no evidence as to whether the defendant had a venereal disease.

The boy, Richard Jones, corroborated the prosecutrix as to the commission of the offense.  Objection was made at the trial to allowing the prosecutrix and Richard Jones to testify, for the reason that they were too young.  The objection was overruled.

The mother of the prosecutrix was present at the trial, but was not put on the witness stand by the State, nor were the three uncles of prosecutrix.  The grandmother was dead at the time of the trial.

The court did not instruct on the subject of an alibi, but with that exception it instructed on all the law of the case, including the subjects of the presumption of innocence, reasonable doubt and good character.  By an instruction, reasonable doubt was defined as follows:

"Reasonable doubt as used in these instructions, to entitle the defendant to an acquittal on that ground, means a substantial doubt arising in your minds upon careful consideration  of all  the  facts  and circumstances proven in the case and not a mere possibility of the defendant's innocence."

The court also gave this instruction:

"The mere fact that the said Rita Washington was in a physical condition that indicated that she had been criminally assaulted, if you so find, from the evidence, is not itself sufficient to warrant you in finding that such condition was the result of an assault upon her by the defendant, and the burden of proving that the assault was made upon her by the defendant is upon the State and such proof must be made to your satisfaction beyond a reasonable doubt, as heretofore in these instructions defined."

Among the instructions was the standard one as to the credibility of the witnesses, which did not call attention to any particular witness.

The trial court's attention was not called to the question of an instruction on an alibi either at the trial or in the motion for a new trial.

The defendant asked the following instructions which were refused:

"The mere fact that the said Rita Washington was criminally assaulted, if you so find from the evidence, is not of itself sufficient to warrant you in finding that her condition was the result of an assault upon her by the defendant, and the burden of proving that the assault was made upon her by the defendant is upon the State and such proof must be made to your satisfaction beyond a reasonable doubt, as heretofore in these instructions defined, then you are bound to presume that the said Rita's condition was from other source or cause, no matter whether the evidence shows what the source or cause was or not."

"The defendant's guilt must be established beyond a reasonable doubt. Proof beyond a reasonable doubt is such as will produce an abiding conviction in the mind to a moral certainty that the fact exists, that is claimed to exist, so that you feel certain that it exists. A balance of proof is not sufficient. A juror in a criminal case ought not to condemn unless the evidence excludes from his mind all reasonable doubt, unless he be so convinced by the evidence, no matter what the class of evidence, of the defendant's guilt, that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interest."

I.    The failure to instruct on an alibi is not in this case reversible error. The court's attention was not called to the propriety of such an instruction either at the trial or in the motion for a new trial. [State v. Dockery, 243 Mo. 592, l. c. 599.]

Instructions.

II.   We appreciate the point made by the defendant as to the definition of reasonable doubt. We think that such definition should not be used. It has been

Reasonable
Doubt.
both condemned and commended by this court. Appellants sometimes ask for a reversal because such definition was not made. On the contrary, sometimes, as in this case, they ask for a reversal because it is made. It was said by SHERWOOD, J., in State v. Robinson, 117 Mo. l. c. 661: "It is difficult to explain simple terms like 'reasonable doubt' so as to make them plainer. Every attempt to explain them renders an explanation of the explanation necessary."

The instruction in the form given in this case was approved by GANTT, J., in State v. Nerzinger, 220 Mo. l. c. 49, as follows: "As said in State v. Leeper, 78 Mo. 470, its use in this form is almost canonized, and this court has often admonished the circuit courts that it is better to adhere to instructions that have received the approval of this court and not attempt definitions which add nothing to the meaning of well understood terms."

It is not reversible error to give or refuse such a definition. The instruction on reasonable doubt asked by the defendant and refused by the court was properly refused. We can clearly understand the first sentence in it, viz.: "The defendant's guilt must be established beyond a reasonable doubt." The remainder of the instruction is unintelligible to us.

Youthful
Witnesses.
III. It was not error to admit the evidence of the prosecutrix and of Richard Jones over the objection that they were too young. We have not set out their evidence at length, but we have examined it to assure ourselves on that point. The little boy appears to be rather unusually intelligent for one of his race, age and opportunity. The little girl in many respects showed dullness by her testimony. But we are satisfied that the trial court exercised a sound discretion in overruling the objection. In the case of State v. Headley, 224

Mo. 177, the prosecutrix was only five years old and the principal other witness was seven. In that case, as in this, there was no doubt that somebody committed the offense. The admission of the evidence of the children was sustained.

IV. The instruction as to the consideration to be given to the fact that Rita Washington had been assaulted, if such were the fact, which was asked by defendant and refused by the court was supplied by the instruction given by the court on the same subject. The given instruction was drawn so as to fully protect the rights of the defendant.

*Point Covered by Other Instructions.*

V. Appellant makes the point that the court should have instructed on the subject of an attempt to rape. The evidence for the State showed the actual commission of the crime. There is no evidence tending to show an unsuccessful attempt. Under such circumstances the instruction was properly refused. [State v. McCaffery, 225 Mo. l. c. 623, and cases cited.]

*Instructions on Attempt: Evidence of Completed Crime.*

VI. Appellant contends that there is no evidence to support the verdict of the jury and calls attention to the fact that the uncles of the prosecutrix who lived at the same house did not testify, and the inference was suggested that their guilt prevented them from being put on the stand. That suggestion is not entirely without foundation. We have not overlooked the fact that defendant continued to sleep at Lewis's house until he was arrested. That fact tended to show innocence. The uncles also remained there. They were equal in that respect. It is difficult to convict people who are innocent—sometimes difficult to convict those who are

*Evidence Reviewed.*

guilty, but rape, seduction and incest are crimes which stand in a class by themselves. Convictions for these crimes are often procured through perjury—perjury committed to shield the character of the prosecutrix or some one else. We have, therefore, examined the evidence in this case with unusual care; but have not found anything therein which raises substantial doubt in our minds of the correctness of the verdict of the jury. The judgment of the trial court is, therefore, affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of ROY, C., was modified by the court and as modified is adopted as the opinion of the court. All the judges concur.