**Virgil HILDRETH and Annalee Hildreth,
Plaintiffs-Respondents,**

v.

**Robert KEY, Defendant-Appellant.**

No. 7893.

Springfield Court of Appeals.

Missouri.

Dec. 16, 1960.

Charles D. Tudor, A. L. Shortridge, Joplin, for defendant-appellant.

Edward G. Farmer, Jr., Stewart E. Tatum, Joplin, for plaintiffs-respondents.

**604**

STONE, Presiding Judge.

This is an action for damages by Virgil and Annalee Hildreth, the adoptive father and the natural mother of Steven Alan Hildreth, for the alleged wrongful death of Steven, then six years of age, by reason of injuries sustained when he was struck about 1:00 P.M. on Sunday, November 14, 1954, by a 1949 Nash automobile then being driven by defendant, Robert E. Key, on Iron Gates Road in a suburban community near Joplin, Missouri. From the judgment of $8,000 entered upon the verdict, defendant has perfected this appeal. We pass defendant's initial appellate complaint, i. e., that the trial court erred in overruling his motion for a directed verdict at the close of plaintiffs' evidence, because, by thereafter offering evidence, any such error was waived. Snead v. Sentlinger, Mo., 327 S.W.2d 202, 203(1); Wilt v. Waterfield, Mo., 273 S.W.2d 290, 293–294(2); Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607(12). But, the further complaint of error in overruling defendant's motion for a directed verdict at the close of all of the evidence requires a factual review, in which we should and do give appropriate recognition to the basic principle that, in determining whether a submissible case was made, we must consider the evidence in the light most favorable to plaintiffs, must accord to them the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiffs' case. Daniels v. Smith, Mo., 323 S.W.2d 705, 706(2); Anderson v. Welty, Mo. App., 334 S.W.2d 132, 134(2); Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 401(1); Pieper v. Lewis, Mo.App., 321 S.W.2d 4, 5(2).

Defendant turned north onto Iron Gates Road from 25th Street, the second east-and-west street south of the point of accident. Iron Gates had a two-lane blacktop roadway, the width of which was not shown more precisely than that two automobiles could pass without difficulty. The shoulder on each side of the blacktop was quite narrow (again we find no measurement or estimate of width), and at and near the point of accident the ground sloped from the east edge of the blacktop into the north-and-south drainage ditch, about eighteen inches in depth, which ran parallel with and on the east side of the roadway. There was no curb, gutter or sidewalk on either side. The day was sunny and warm, and the roadway was dry. Defendant, an automobile mechanic thirty-three years of age, and his wife, the only passenger in his automobile, were going to a wedding. They were in no hurry—"we had plenty of time." As he drove north on his right-hand or east side of Iron Gates, defendant was traveling at a rate of speed described by plaintiffs' witnesses as "moderate" and estimated by defendant at fifteen to twenty miles per hour. At a point in front of the Cox home, which faces Iron Gates and is situate on the northeast corner of the intersection of Iron Gates and 24th Street, both defendant and his wife heard "a noise" or "a thud." Defendant immediately stopped his automobile, and his wife opened the right door and "looked out to see what it was." Steven was lying "at the (east) side of the road," about fifty-four feet north of the north line of 24th Street, with his feet on the sloping east shoulder of Iron Gates and "his head * * * down at the bottom of the (drainage) ditch." He was "close to," just "a little ways north" of, a short walkway bridging the shallow drainage ditch on the east side of Iron Gates, that is, leading from a low north-and-south retaining wall along the front of the Cox yard to the east edge of the blacktop roadway. Steven died the same day without regaining consciousness. Subsequent inspection of defendant's automobile revealed a dent in the right front fender just above and inside the right headlight. It was admitted upon trial that Steven died "as a result of having come into contact" with defendant's automobile. Neither defendant nor his wife had seen Steven prior to the accident.

On the day of this tragic occurrence, Steven and his mother had Sunday dinner at the home of his maternal grandmother, Mrs. Katherine Harmon, who lived on the southwest corner of the intersection of Iron Gates Road and 24th Street. After dinner, Steven went outside to play with "the Cox children"; and, in the course of childish frolic, Steven and Lynn Cox, the youngest Cox child, got into the back yard of the Cox home on the northeast corner of the intersection, where Mrs. Edith Cox, Lynn's mother, talked with Steven and observed him winding the string around a yo-yo. By reason of the fact that Lynn's parents were preparing to take Lynn with them to visit his grandparents, Steven left the back yard of the Cox home, and Mrs. Cox went inside to "gather up a few things." The only information we have concerning Steven's subsequent conduct and course is gleaned from the testimony of Lynn Cox, who was four years and seven months old when the accident occurred on November 14, 1954, and nine years and ten months old when the case was tried on January 13, 1960. Passing for the moment defendant's complaints pertaining to Lynn's competency (of which we treat anon), we here note the material facts which the jury might have found from his testimony as received.

When Steven left the Coxes' back yard, he "started home" (i. e., to return to his grandmother's home "cater-cornered" across Iron Gates Road), and Lynn went with Steven around the south side of the Cox home and "to the middle" of the walkway bridging the shallow north-and-south drainage ditch along the east side of Iron Gates Road. At that point, Lynn heard his mother calling for him and "ran back around" the south side of the Cox home. When Lynn left Steven, he (Steven) was "playing with his yo-yo" and "walking on top of the bridge (walkway)." Lynn did not see defendant's automobile or witness the accident, but as he rounded "the (southwest front) corner of the house I heard some noise." Lynn's mother "heard this commotion, * * * panicked and run for the back door," thinking that it was her boy who had been injured. By the time Lynn had reached the back porch, his mother met him with the relieved ejaculation that "she thought I (Lynn) got hit by a car." When she went around to the front yard, she found the stricken Steven. There was no eyewitness to the fatal accident.

Defendant earnestly insists that, even with Lynn's testimony, plaintiffs did not make a prima facie case on their theory of submission, to-wit, for alleged primary negligence in failing to maintain a vigilant lookout. Defendant's argument on this point runs along the line that, since the front of the Cox home was thirty feet east of the walkway and the distance Lynn ran after leaving Steven on the walkway and before hearing the "noise" as he (Lynn) rounded the corner of his home "could have been as much as forty feet," and since we should recognize judicially (so defendant says) that Lynn "ran at the rate of 8.8 feet per second," the accident occurred "at least four or five seconds" after Lynn left Steven; that, depending upon whose estimate of speed is used, defendant's automobile must have been "from ninety to one hundred seventy-five feet" distant when Lynn left Steven on the walkway; that, during this interval of four or five seconds, Steven "could have done any number of things"; that "nothing in the evidence indicated when and in what manner (Steven) started or arrived on the roadway"; and that, therefore, plaintiffs' case rested upon the unwarranted "assumption that Steven was on the pavement or moving toward the pavement in such a manner that he was seen or could have been seen by the defendant in time to (have avoided) the accident."

Our view of the evidence and of the inferences reasonably deducible therefrom is not so narrow and restricted. Plaintiffs adduced evidence that, when defendant's north-bound automobile was "just south" of the intersection of Iron Gates

Road and 24th Street, defendant "was looking back over his left shoulder" as his automobile was passing a south-bound automobile. Compare Spencer v. Kansas City Public Service Co., Mo.App., 250 S.W.2d 187, 191(3). Defendant and his wife had no recollection of having passed a south-bound automobile, and both insisted that, as they approached the point of accident, they "were watching ahead" with undistracted attention. However, regardless of whether, in fact, defendant then maintained a vigilant lookout ahead, certainly the continuous and inescapable duty to do so rested upon him. Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 129(4); Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 82(4); Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, 23(2). To satisfy and discharge that duty, he was required, stated generally, to look in such observant manner as to enable him to see what one in the exercise of the highest degree of care for himself and others could and should have seen under similar circumstances [Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118 (8); Leek v. Dillard, Mo.App., 304 S.W.2d 60, 67(15); Riley v. Young, Mo.App., 218 S.W.2d 805, 808(1)]; and, as related to the facts of the instant case, that duty encompassed the obligation to see anyone on the unobstructed shoulders of Iron Gates Road or on the walkway bridging the drainage ditch in front of the Cox home. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 281(6); Scaggs v. Uetrecht, Mo., 244 S.W.2d 17, 20; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 938(4).

■ The testimony of Lynn Cox placed Steven "in the middle" of the walkway where (to accept the statement in defendant's brief) Steven was five to eight feet from the point of accident and was within four or five seconds of the tragedy. The distance then intervening between the walkway and defendant's automobile was (again using the statement of defendant's counsel) "from ninety to one hundred seventy-five feet." Wherever defendant then may have been within that range, he had a clear and unobstructed view of the walkway and (as the jury reasonably might have found from Lynn's testimony) of Steven "playing with his yo-yo" and "walking on top of the bridge (walkway)." "Where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed." Smith v. Kansas City Public Service Co., 328 Mo. 979, 991, 43 S.W.2d 548, 553(7); Weis v. Melvin, Mo., 219 S. W.2d 310, 311(4); Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 546(5); Thaller v. Skinner & Kennedy Co., supra, 315 S.W.2d loc. cit. 129. Thus, although instant defendant said that he had looked, his failure to see that which was plainly visible constituted negligence [Schmidt v. Allen, Mo., 303 S.W.2d 652, 657(5); Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 586], as much so as if he had not looked at all. Burnett v. St. Louis Public Service Co., Mo., 337 S.W.2d 921, 926(11); Wright v. Osborn, supra, 201 S.W.2d loc. cit. 928; James v. Berry, Mo. App., 301 S.W.2d 530, 533(6); Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378, 383(5).

■ But, further pressing his contention that no submissible case was made against him, defendant argues that there was no showing that his failure to maintain a vigilant lookout, if so, was the proximate cause of the accident. True, the mere fact that injury follows negligence does not necessarily create liability [Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, 245(2); Springer v. Security Nat. Bank Savings & Trust Co., Mo., 175 S.W.2d 797, 800(5)], and plaintiffs, upon whom the burden of establishing the essential element of causal connection is cast [Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 828(5); Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600, 608], do not carry their burden by leaving that essential element in the nebulous twilight of speculation, conjecture and surmise. Donnelly v. Goforth, Mo., 284 S.W.2d 462, 466; Hartlage v. Halloran, Mo.App., 331 S.W.2d 197,

200. On the other hand, causal connection need not be established by direct and positive evidence but may be shown by proof of facts and circumstances from which such connection reasonably may be inferred. State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 28 S.W.2d 97, 102(6); Steele v. Woods, Mo., 327 S.W.2d 187, 195(7); Leek v. Dillard, supra, 304 S.W. 2d loc. cit. 65(10); Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 154(5); Johnessee v. Central States Oil Co., Mo.App., 200 S.W.2d 383, 388(1).

We think that the jury reasonably might have inferred and found that, if defendant had maintained a vigilant lookout, he would, while yet ninety to one hundred seventy-five feet distant from the walkway, have seen Steven "playing with his yo-yo" and "walking on top of the bridge (walkway)" within a few (no more than eight) feet of the point where the boy subsequently was struck, and that, since Steven had "started home" to his grandmother's residence on the west side of Iron Gates, he was walking in a westerly direction toward the roadway. Seeing six-year old Steven in such position and circumstances (because in law held to have seen what looking would have revealed), defendant "should have taken precautions commensurate to the danger potential in such a situation," recognizing that "a child of such tender years, being engaged in play or other preoccupations on or near a roadway is almost entirely devoid of an appreciation of danger" [Ozbun v. Vance, Mo., 323 S.W.2d 771, 775–776] and that "(t)houghtless and impulsive acts of children are to be expected and guarded against." Schmidt v. Allen, Mo., 303 S.W.2d 652, 659. See also Wood v. Claussen, Mo.App., 207 S.W.2d 802, 808(2), and annotation 30 A.L.R.2d 5, 32–35, 75, 105.

■ Without conjuring up purported judicial knowledge of stopping distances much shorter than those contained in the Missouri Drivers Guide widely distributed by our State Highway Patrol [see Chawkley v. Wabash Ry. Co., 317 Mo. 782, 797, 297 S.W. 20, 23–24(2); Leavell v. Thompson, 238 Mo.App. 130, 176 S.W.2d 854, 857(2)], we do know judicially that, under the conditions prevailing at the time of accident, defendant's automobile, traveling fifteen to twenty miles per hour, could have been stopped within ninety feet; and, with no approaching south-bound traffic on Iron Gates, certainly defendant could have turned or swerved into his left-hand or the west lane of Iron Gates in a shorter distance, it having long been accepted as a matter of common knowledge that automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel. Brown v. Callicotte, Mo., 73 S.W. 2d 190, 193; Payne v. Smith, Mo., 322 S.W.2d 764, 768(5); Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 671. Of course, a warning could have been given in an even shorter time and distance. Cf. Cox v. Reynolds, Mo.App., 18 S.W.2d 575, 577–578(2, 3).

■ "(T)he usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained" [Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 811(4); Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838, 843(4); Housden v. E. I. DuPont De Nemours & Co., Mo., 321 S.W.2d 430, 433(3)]; and, "(g)enerally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury." Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78(8); Thebeau v. Thebeau, Mo., 324 S.W.2d 674, 678(2). As stated in the American Law Institute's definition of legal or proximate cause, approved by our Supreme Court in Giles v. Moundridge Milling Co., 351 Mo. 568, 577, 173 S.W.2d 745, 750, "(t)he actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liabil-

ity because of the manner in which his negligence has resulted in the harm" [2 Restatement, Torts, § 431, p. 1159]; and, in their comments upon the quoted definition, the same authorities tell us that "(t)he word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." Of course, the question of the existence of causal connection depends upon the facts of the particular case under consideration [Bowman v. Heffron, Mo., 318 S.W.2d 269, 274(5); Duke v. Missouri Pacific R. Co., Mo., 303 S.W.2d 613, 618(5)]; and, when that question is open to a reasonable difference of opinion, it is for the jury. 2 Restatement, Torts, § 434, p. 1171; Giles v. Moundridge Milling Co., supra, 173 S.W. 2d loc. cit. 750. With all of the foregoing in mind, we unhesitatingly conclude that whether defendant was negligent in failing to maintain a vigilant lookout and whether such negligence was the proximate cause of the accident were issues for determination by the jury. Ferdente v. St. Louis Public Service Co., Mo., 247 S.W.2d 773, 777–778(4); Gillis v. Singer, Mo.App., 86 S.W.2d 352, 357(5). See also Petty v. Henroid, Mo., 313 S.W.2d 688, 689–690(2); Robertson v. Scoggins, Mo.App., 73 S.W. 2d 430, 434–435.

■■■■ What we have written concerning submissibility of the case is largely dispositive of defendant's attack upon plaintiffs' principal verdict-directing instruction, numbered 6. As we have held, the jury reasonably might have found that, after defendant saw, or in the exercise of the highest degree of care could and should have seen, Steven "playing with his yo-yo" and walking in a westerly direction on the walkway within eight feet of the point of accident, defendant had the means and

ability so to have acted that Steven would not have been struck. This being true, the findings required by instruction 6 were sufficient and it was not essential that this instruction hypothesize the exact manner in which, and the precise means by which, defendant could have acted to have avoided the tragedy. Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 25(9, 10); Creech v. Riss & Co., Mo., 285 S.W.2d 554, 562; Horrell v. St. Louis Public Service Co., Mo., 277 S.W.2d 612, 614–615; Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693. Nor was instruction 6 reversibly erroneous, on the instant record, in hypothesizing a finding that Steven was "on or along" Iron Gates Road, for, as we have noted, it was defendant's duty to see anyone on the unobstructed shoulders of Iron Gates or on the walkway. Lee v. Holland, Mo.App., 258 S.W.2d 30, 34(5–7). See again the Williams case, supra, 292 S.W.2d loc. cit. 281(6); the Scaggs case, supra, 244 S.W. 2d loc. cit. 20; the Wright case, supra, 201 S.W.2d loc. cit. 938(4); the Ozbun case, supra, 323 S.W.2d loc. cit. 775.

■■■■ With the submissibility of plaintiffs' case admittedly depending upon the testimony of Lynn Cox, a child of four years and seven months at the time of accident and of nine years and ten months at the time of trial, we have been deeply concerned with defendant's appellate complaints that the trial court erred "in permitting * * * Lynn Cox to testify * * * over the objections of the defendant when said witness was incompetent by statute [V.A.M.S. § 491.060] * * * and was not shown to be properly qualified as a witness" and "in that defendant was not permitted to complete his cross-examination of Lynn Cox with regard to his qualifications as a witness." We observe preliminarily that, when a child under the age of ten years is offered as a witness, "the correct practice" is for competency as a witness to be determined upon preliminary examination before the child is sworn and permitted to testify [Davenport v. King Electric Co., 242 Mo. 111, 145 S.W.

454, 456], and the cases in this and other jurisdictions indicate that the proper, if not required, practice is for such preliminary examination to be conducted out of the presence of the jury.[1] But, of the failure to follow that procedure upon trial of the instant case, defendant does not complain and, for that matter, is in no position to complain, having made no demand for a preliminary examination of Lynn Cox outside the presence of the jury and having interposed no objection to the procedure followed in determining Lynn's competency. Davenport v. King Electric Co., supra.

■ The statute [V.A.M.S. § 491.060] does not provide that *all* children under ten years of age shall be incompetent to testify, but only those "who (appear) incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," and our Supreme Court has said that the effect of the statute is to lower the age of presumed capacity and competency from fourteen years, as at common law, to ten years, leaving the common-law rule in force as to proffered witnesses under ten years of age, with the burden of proving the capacity and competency of any such witness resting upon the party who offers the witness. State v. Anderson, 252 Mo. 83, 98, 158 S.W. 817, 821 (8); State v. Jones, 360 Mo. 723, 727, 230 S.W.2d 678, 680(1). Many cases reiterate that there is no precise age at which a minor becomes a competent witness [2] and that the test of competency of a child of tender years includes four essential elements (to which we sometimes hereinafter refer simply by number), to-wit, " '(1) Present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation.' " [3]

■ Although competency as a witness must be determined *at the time of trial,* only two of the four essential elements, to-wit, the first and the fourth, depend upon the child's *mental capacity at that time.* The second element inquires into *mental capacity as of the time of the occurrence* under consideration [cf. Bradburn v. Peacock, 135 Cal.App.2d 161, 286 P.2d 972, 974], while the third element probes the sufficiency of the child's *memory to bridge the period intervening between the occurrence and the trial.* Of course, the younger the child is at the time of the occurrence the more dubious becomes his capacity then "truly to observe and to register such occurrence" and the more searching should be the judicial inquiry bearing upon this element. Rosche v. McCoy, 397 Pa. 615, 156 A.2d 307, 310(8). And the longer the intervening period between the occurrence and the trial, the more suspect becomes the sufficiency of the child's memory to bridge that time interval, for certainly memory does not improve with the running of time. Rosche v. McCoy, supra, 156 A.2d loc. cit.

1. State v. Groves, Mo., 295 S.W.2d 169, 171; State v. Tillett, Mo., 233 S.W.2d 690, 693; State v. Turner, Mo., 274 S.W. 35, 36. See also Hill v. Skinner, 81 Ohio App. 375, 79 N.E.2d 787, 789; Cross v. Commonwealth, 192 Va. 249, 64 S.E.2d 727, 730; Artesani v. Gritton, 252 N.C. 463, 113 S.E.2d 895, 897.

2. State v. Groves, supra, 295 S.W.2d loc. cit. 172(2); State v. Tillett, supra, 233 S.W.2d loc. cit. 692; State v. Jones, 360 Mo. 723, 230 S.W.2d 678, 680; Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S.W.2d 858, 862; State v. Hubbard, Mo., 295 S.W. 788, 791; State v. Headley, 224 Mo. 177, 123 S.W. 577, 581; State v. Jeffries, 210 Mo. 302, 109 S.W. 614, 622; State v. Nelson, 132 Mo. 184, 33 S.W. 809, 812.

3. Burnam v. Chicago Great Western R. Co., supra, 100 S.W.2d loc. cit. 862; State v. Jones, supra, 230 S.W.2d loc. cit. 680–681(3); State v. Tillett, supra, 233 S.W.2d loc. cit. 692(10); State v. Statler, Mo., 331 S.W.2d 526, 528(4); Baker v. Baker, Mo.App., 319 S.W.2d 11, 16.

310(10). So, a child witness, too immature to satisfy the quoted test of competency as of the date of the occurrence, may not be treated as a testimonial plum to be ripened on the judicial tree by extravagant delay and finally shaken down in due season.

■ The human memory is, at best, frail, fallible, and frequently a fond deceiver. Many figmentary recollections and fictitious remembrances truly "are begot in the ventricle of memory, nourished in the womb of pia mater, and delivered upon the mellowing of occasion." Shakespeare, Love's Labour's Lost, Act IV, Sc. 2. Observing that the impressions made on the human memory ofttimes "resemble * * * the traceless track of the arrow through the air" and that "(m)any memories are mere sieves," Lumpkin, J., a judicial realist of another day, exclaimed that "I would sooner trust the smallest slip of paper for truth, than the strongest and most retentive memory ever bestowed on mortal man." Miller v. Cotten, 5 Ga. 341, 349. And, illustrating his conclusion with a personal experience, the same jurist pointedly declared that "(t)hings are told to persons, till they verily believe that they witnessed them; and we repeat events until we are ready to swear in the utmost sincerity, that we are spectators of their occurrence." Miller v. Cotten, supra, 5 Ga. loc. cit. 349. A fortiori, "(t)he force of suggestion, always strong, is particularly potent with the impressionable and plastic mind of child-

hood"; and, "without intending any such result, the repetition of supposed facts in the presence of a child often creates a mental impression or conception that has no objective reality in any actually existing fact." People v. Delaney, 52 Cal.App. 765, 199 P. 896, 900; Cross v. Commonwealth, 195 Va. 62, 77 S.E.2d 447, 452. "In children of tender age no reasonable person would expect a complete power of discriminating between his means and sources of knowledge; and more or less undesigned coloring and miscoloration is almost inevitable." Hughes v. Detroit, G. H. & M. Ry. Co., 65 Mich. 10, 31 N.W. 603, 606. Thus, with respect to the third element in the quoted test of competency, it becomes eminently proper, in fact necessary, to ascertain whether the child has an *independent* recollection of the occurrence [People v. Delaney, supra, 199 P. loc. cit. 900–901; Hollaris v. Jankowski, 315 Ill.App. 154, 42 N.E.2d 859, 860–861]; and, the longer the time interval between the occurrence and the trial, the more extensive and the more penetrating the judicial inquiry appropriately may be.

In the instant case, Lynn Cox was only four years and seven months old at the time of accident and thereafter five years and three months passed before he was offered as a witness at the trial. Although the competency of a child witness has been considered in many Missouri cases,[4] no reported case in this jurisdiction has been

4. In the cases collated in footnotes 4 to 7, incl., the ages following each citation are, except as otherwise specifically noted, the ages of the child witness at the time of the occurrence and at the time of trial, respectively. State v. Groves, supra, 295 S.W.2d loc. cit. 171 [6 yrs. 5 mos. and 7 yrs. 7 mos.]; State v. Smith, Mo., 261 S.W.2d 50, 55 [7 yrs. and 8 yrs.]; State v. Villinger, Mo., 237 S.W.2d 132, 134 [9 yrs. and 10 yrs.]; State v. Tillett, supra, 233 S.W.2d loc. cit. 691 [6 yrs. and (apparently) 8 yrs.]; Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S.W.2d 653, 657 [9 yrs. and "nearly" 11 yrs.]; Burnam v. Chicago Great Western R. Co., supra, 100 S.W.2d loc. cit. 861 [5 yrs. 6 mos. and 8 yrs. 6 mos.]; Mundinger v. Sewell, Mo.App., 40 S.W.2d 530, 531 [5 yrs. 6 mos. and 9 yrs. (apparently no objection to competency)]; State v. Hubbard, supra, 295 S.W. loc. cit. 789 [6 yrs. and 7 yrs.]; State v. Turner, supra [8 yrs. at trial 5 mos. after occurrence]; State v. Belknap, Mo., 221 S.W. 39 [9 yrs. 9 mos. and 10 yrs. 3 mos.]; State v. Sykes, 248 Mo. 708, 154 S.W. 1130 [9 yrs. and (apparently) 11 yrs.]; Davenport v. King Electric Co., 242 Mo. 111, 145 S.W. 454 [7 yrs. 8 mos. and 10 yrs. 4½ mos.]; State v. Headley, 224 Mo. 177, 123 S.W. 577 [5 yrs. at time of occurrence and at trial, 2 mos. 17 days later]; State v. Nelson, supra [7 yrs. and 9 yrs.].

cited or found in which (a) a child witness has been offered who, at the time of the occurrence under consideration, was less than five years of age or (b) a child, still under ten years of age, has been permitted to testify concerning an occurrence after a time interval even approaching five years and three months. Turning to other jurisdictions, counsel for instant defendant have cited one case [Rosche v. McCoy, supra], and we have found others, in which a child less than five years of age at the time of the occurrence has been offered as a witness. In some of those cases, the appellate court held that the trial court had not abused its discretion in permitting the child witness to testify.[5] In other cases, usually on the basis of what had been disclosed by examination in the trial court, the child was said to have been incompetent as a witness,[6] while in a few instances the appellate court ruled that reversible error had been

committed by the trial judge in refusing, without an adequate examination, to permit the child witness to testify because of extreme youth.[7] But, in only one case [Robinson v. State, 70 Fla. 628, 70 So. 595] did the time interval between the occurrence and the trial approach the interval of five years and three months in the instant case; and, for reasons pointed out marginally,[8] even the Robinson holding is of limited persuasiveness here. Furthermore, we note the significant fact that, in most of the Missouri cases in which the testimony of a child witness has been received, such testimony has pertained either to a crime (usually a sex offense) committed upon the person of the child witness or to an accident in which the child witness has been injured, and thus "about a subject that would naturally leave an impression upon his memory of a much more lasting character than if it were something that he

5. Robinson v. State, 70 Fla. 628, 70 So. 595 [4½ yrs. and "about" 9 yrs.]; Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 [4 yrs. 11 mos. and "nearly" 5 yrs. 6 mos. (affirming death sentence for murder)]; Hill v. Skinner, 81 Ohio App. 375, 79 N.E.2d 787 ["approximately" 4 yrs. with time interval between occurrence and trial not shown]; Mullins v. Commonwealth, 174 Va. 472, 5 S.E.2d 499 ["about" 4½ yrs. with trial less than 1 yr. later]; In re Lewis, D.C.Mun.App., 88 A.2d 582, 583 [4 yrs. 8 mos. and 4 yrs. 10 mos. ("no specific objection as to her competency")]. See statement in Leahman v. Broughton, 196 Ky. 146, 244 S.W. 403, 404, [5½ yrs. and 8 yrs.], that there had been "a few cases where the witness was only 4 years of age."

6. Rosche v. McCoy, 397 Pa. 615, 156 A. 2d 307, 310–312 [4 yrs. and 7 yrs.]; Commonwealth v. Goldman, 127 Pa. Super. 523, 193 A. 112 [4 yrs. 7 mos. and not yet 5 yrs.]; Hollaris v. Jankowski, 315 Ill.App. 154, 42 N.E.2d 859 [4 yrs. and 8 yrs. (it appearing *affirmatively* that "child had little, if any, independent recollection" concerning the occurrence)]; People v. Peck, 314 Ill. 237, 145 N.E. 353 [4 yrs. at time of occurrence and "considered *(by trial court)* too young to testify"]; People v. Delaney, 52 Cal.App. 765, 199 P. 896 ["not quite" 4 yrs. and about 4 yrs. 2 mos.

(but remanded for more comprehensive qualifying examination of child)]; State v. Wilson, 109 La. 74, 33 So. 85 [3 yrs. 8 mos. and not quite 4 yrs.]; Watkins v. State, 78 Tex.Cr.R. 65, 180 S.W. 116, 117(5) [4 yrs. 9 mos. at time of alleged rape, but child's statements admissible as part of res gestae].

7. Bradburn v. Peacock, 135 Cal.App.2d 161, 286 P.2d 972 [3 yrs. 3 mos. and 5 yrs.]; Artesani v. Gritton, supra [4 yrs. 8 mos. and 7 yrs. 3 mos.]. To the same effect, see also Litzkuhn v. Clark, 85 Ariz. 355, 339 P.2d 389 [5 yrs. and 6 yrs.]; Hare v. Pennell, 37 N.J.Super. 558, 117 A.2d 637 ["almost" 6 yrs. and 7½ to 8½ yrs.].

8. Stating that "(w)here the witness shows an appreciation of the nature and obligation of an oath, her competency to testify appears," the Robinson opinion apparently ignored the other three essential elements in our Missouri test of competency. In the Robinson case, the child had been an eyewitness to a murder, while in the instant case Lynn Cox was neither involved in, nor an eyewitness to, the accident under consideration. Finally, in the Robinson case, "(t)here was evidence sufficient to sustain the verdict even if error was committed in admitting the child's testimony," while in this action the submissibility of plaintiffs' case depends upon Lynn's testimony.

merely saw or observed" [Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 35, 100 S.W.2d 858, 862], while in the remaining cases (with the single exception of State v. Tillett, Mo., 233 S.W.2d 690, a prosecution for murder of the witness' three-year old sister) the child has testified concerning a brutal crime or a serious accident to which the child has been an eyewitness.

Notwithstanding all of the foregoing, we are unwilling to declare, *as a matter of law,* that *no child* four years and seven months of age has the mental capacity truly to observe and register facts such as those to which Lynn Cox testified and a memory sufficient to retain an independent recollection of those facts for five years and three months thereafter [cf. Bradburn v. Peacock, supra, 386 P.2d loc. cit. 974; Wheeler v. United States, 159 U.S. 523, 524, 16 S. Ct. 94, 40 L.Ed. 244, 247; In re Lewis, D.C. Mun.App., 88 A.2d 582, 583], although we confess our personal conviction that a child of such tender years so generously endowed might well be regarded as a prodigy. Without descending into interminable detail concerning Lynn's examination, we voice the opinion that his testimony indicates that Lynn was an intelligent lad for his age [cf. Burnam v. Chicago Great Western R. Co., supra, 100 S.W.2d loc. cit. 862; State v. Headley, 224 Mo. 177, 182, 123 S.W. 577, 578], and that he had at least some independent recollection concerning the facts of which inquiry was made, as evidenced by his positive answers on probably unforeseeable cross-examination concerning certain details, e. g., as to the color of Steven's yo-yo and as to the number and the relative position of the several trees in the front yard of the Cox home at the time of accident. However, we find no affirmative expression by the trial judge such as that recorded in State v. Tillett, supra, 233 S.W. 2d loc. cit. 693, i. e., that " 'he is a bright boy' "; and, the cold, inanimate record of Lynn's testimony does not demonstrate any precocity [Rosche v. McCoy, supra, 156 A. 2d loc. cit. 311; Hollaris v. Jankowski, 315

Ill.App. 154, 42 N.E.2d 859, 861] or, for that matter, even permit a confident belief that he is "unusually intelligent" [State v. Sykes, 248 Mo. 708, 713, 154 S.W. 1130, 1132] for a boy of his years. Mullins v. Commonwealth, 174 Va. 472, 5 S.E.2d 499, 500.

We have written at length on this point that our holding may not be misinterpreted or misapplied. We would be less than frank if we failed to record our grave doubt of Lynn's qualification as a witness, more particularly as to whether his examination adequately showed that he could and did satisfy the *second* and *third* elements in the quoted test of competency. But, taking the record as it comes to us, as we must [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); Prentice v. Williams, Mo.App., 324 S.W.2d 466, 469(2)], it is crystal clear that, in the trial court, defendant challenged Lynn's testimonial qualification *on one specific ground, and on that ground only,* i. e., failure to satisfy the *first* essential element in the test of competency. When, after some preliminary examination of Lynn in the presence of the jury, plaintiffs' counsel said, "I think his (Lynn's) qualifications have been shown," the objection of defendant's counsel was, "At this time we think the witness as being under the age of 10, that there has been no sufficient ground laid to show that he knows the meaning of an oath and is qualified to testify in the case." Whereupon, the court interrogated Lynn, satisfied himself that Lynn did understand his obligation to speak the truth, and then overruled defendant's quoted objection. There was no other or further objection to Lynn's qualification. That we have not misconstrued defendant's position in the trial court becomes abundantly plain from Lynn's cross-examination, near the close of which counsel veered into subject-matter bearing upon the *first* element, such as whether Lynn knew the difference between right and wrong, "what it meant to not tell the truth," and "if you did lie, what is going to happen to you." When plaintiffs' counsel objected "to this

repetition," the statement of defendant's attorney was, "we have a right to go into the competency of this witness by virtue of the fact that he is made incompetent by statute, and it is within the discretion of the trial court to determine whether or not he can testify, and in order that we may determine whether or not the court has or has not *used* (abused) that discretion, we are entitled to go into his knowledge of right and wrong and his understanding of an oath." The trial judge thought that "has been gone into sufficiently." There was no other objection to, or restriction of, Lynn's cross-examination.

 If there has been no objection in the trial court to the competency [Adair v. Mette, 156 Mo. 496, 506–507, 57 S.W. 551, 553(2); Long v. Martin, 152 Mo. 668, 675, 54 S.W. 473, 475(3); Sprague v. Sea, 152 Mo. 327, 333, 53 S.W. 1074, 1076(2)] or to the qualification [Herrington v. Hoey, 345 Mo. 1108, 1118, 139 S.W.2d 477, 481 (4); Fair Mercantile Co. v. St. Paul Fire & Marine Ins. Co., 237 Mo.App. 511, 518, 175 S.W.2d 930, 934(1, 2); Wardin v. Quinn, Mo.App., 324 S.W.2d 151, 155(6)] of a witness, none may be interposed on appeal. And, we think that it should be and is equally true that, where testimonial competency or qualification has been challenged in the trial court on a specific ground, no additional ground should be considered on appeal, for no principles are entrenched more firmly in our procedure than that a party is bound on appeal by the position taken in the trial court [see West's Missouri Digest, Vol. 2A, Appeal and Error, ⟣171(3)] and that a trial judge may not be convicted of error in overruling an objection on a theory or ground not brought to his attention at the time. See West's Missouri Digest, Vol. 2A, Appeal and Error, ⟣232(2). Instant defendant in effect invited the trial court to determine Lynn's qualification to testify upon the basis of a specific objection directed only to the

*first* essential element in the test of competency, i. e., Lynn's understanding of an obligation to speak the truth. Williams v. St. Louis Public Service Co., 363 Mo. 625, 636, 253 S.W.2d 97, 104(9, 10). See also Douglas v. Farrow, Mo., 334 S.W.2d 234, 240(6). Limiting our appellate review to the same specific objection, we cannot conclude that the trial court's ruling of qualification to testify constituted an abuse of sound judicial discretion [State v. Groves, Mo., 295 S.W.2d 169, 172(4), and cases there cited]; and, with defendant's cross-examination of Lynn otherwise wholly unrestricted, we cannot find prejudicial error in the court's sustention of plaintiffs' objection to further inquiry concerning Lynn's understanding of his obligation to speak the truth.

 Defendant's next complaint is that, since plaintiffs' petition did not plead burial, hospital and ambulance expenses as special damages, the trial court erred in admitting evidence of such expenses and in giving plaintiffs' instruction 5 which permitted recovery therefor. By the so-called compensatory sections of the wrongful death act [V.A.M.S. §§ 537.080 and 537.090, as amended and re-enacted Laws of 1955, p. 778], under which this action was brought, plaintiffs were entitled to recover (if the verdict was for them) such damages, not exceeding the statutory maximum, as the jury might have deemed fair and just, "with reference to the necessary injury resulting from such death," having regard for mitigating and aggravating circumstances. As our Supreme Court tartly observed in Owen v. Brockschmidt, 54 Mo. 285, 289–290, burial expenses "must, if any thing can, be one of the most obvious and necessary injuries resulting from death," and other cases have established that "the necessary injury resulting" to parents from the wrongful death of a minor child includes medical, as well as funeral, expenses.[9] Thus, the recognized

9. Rains v. St. Louis, I. M. & So. Ry. Co., 71 Mo. 164, 169(5); Coleman v. Himmelberger-Harrison Land & Lumber Co., 105 Mo.App. 254, 272, 79 S.W. 981, 987;

measure of damages in actions of this character is the value of the child's services during his minority and "burial and other expenses" incurred by reason of his fatal injury and death, less the expense of his support and maintenance during minority.[10] "General damages are those which the law would impute as the natural, necessary and logical consequence of defendant's wrongful act and such damages do not have to be specifically pleaded, but upon the proper averment of the wrongful act, they are recoverable under a claim of general damages." Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75, 84(11), and cases there cited. So, we are of the opinion that, since the "necessary injury" to parents by reason of the death of their minor child includes burial, hospital, medical and ambulance expenses compelled by the fatal injury, evidence of such expenses should be admissible under an allegation of general damages. That was the holding in the only Missouri case directly ruling this point which we have found. Heath v. Salisbury Home Telephone Co., Mo.App., 27 S.W.2d 31, 43(15), affirmed 326 Mo. 875, 33 S.W. 2d 118. See also Coleman v. Himmelberger-Harrison Land & Lumber Co., 105 Mo.App. 254, 261, 272–273, 79 S.W. 981, 983, 987. Leaman v. Campbell 66 Express Truck Lines, 355 Mo. 939, 199 S.W.2d 359, upon which instant defendant relies, is not controlling here. It was a suit under the *penalty* section of the wrongful death act [former V.A.M.S. § 537.070, repealed Laws of 1955, p. 778], and the excluded evidence of expenses incurred for a housekeeper

pertained to a matter which was "the natural but not necessary result of the wrongful act" and thus to an item of special damages which should have been pleaded anyway. Johnson v. Flex-O-Lite Mfg. Corp., supra, 314 S.W.2d loc. cit. 84. But, note that the trial court in the Leaman case, supra, permitted evidence of funeral expenses. 199 S.W.2d loc. cit. 364. Instant defendant's complaint of error is disallowed.

■ Defendant also asserts that the trial court erred in permitting plaintiff, Virgil Hildreth, "to testify as to his wages and financial status." Virgil stated, without objection, that he was an employee of Gas Service Company. Later, he was asked "what are your wages, sir?" and, after objection made and overruled, answered "$350 a month." That was the *only* question bearing upon "wages and financial status," to which an objection was interposed In his appellate brief, defendant also refers to a subsequent "question" propounded to Virgil, "you are not a rich man, are you?" but, there having been no objection thereto, the propriety of that "question" is not preserved or presented for our review. Sandler v. Schmidt, Mo., 263 S.W.2d 35, 40(9); LeGrand v. U-Drive-It Co., Mo., 247 S.W. 2d 706, 714(13); Reger v. Nowotny, Mo., 226 S.W.2d 596, 598(8). The majority rule undoubtedly is that, in an action for death of a minor child, the court may admit evidence concerning the parents' income and financial condition, where such evidence has a reasonable tendency to show the extent of their pecuniary loss.[11] The rationale of

McFetridge v. Kurn, Mo.App., 125 S.W. 2d 912, 919. See also Brewer v. Rowe, 363 Mo. 592, 605, 252 S.W.2d 372, 379 (concurring opinion of Dalton, J.); Hickman v. Missouri Pac. Ry. Co., 22 Mo. App. 344, 349; annotation 14 A.L.R.2d 485, 535–537; annotation 94 A.L.R. 438; annotation 54 A.L.R. 1077.

10. Degan v. Jewell, 293 Mo. 80, 85–86, 239 S.W. 66, 67(2); Leahy v. Davis, 121 Mo. 227, 233, 25 S.W. 941, 942–943; Marx v. Parks, Mo.App., 39 S.W.2d 570, 574–575(6); Kelly v. City of Higgins-

ville, 185 Mo.App. 55, 64, 171 S.W. 966, 970(11); Stumbo v. Duluth Zinc Co., 100 Mo.App. 635, 639, 75 S.W. 185, 186.

11. Annotation 14 A.L.R.2d 485, 527; annotation 149 A.L.R. 234, 260–267; 25 C.J.S. Death § 103a, loc. cit. 1252–1253; 16 Am.Jur., Death, § 230, p. 154; Collins v. McPherson, 91 Ga.App. 347, 85 S.E.2d 552, 554(3); Christensen v. Pestorious, 189 Minn. 548, 250 N.W. 363, 365; Interurban Ry. Co. v. Trainer, 150 Ark. 19, 233 S.W. 816, 817(3); Butterfield v. Community Light & Power Co.,

such holdings seems to be that jurors should have the right to hear and consider such evidence because poor parents are likely to have more pressing need for, and reasonably may have more confident expectation of, future contributions by their children than would affluent parents.[12] Our Missouri courts appear to have accepted and followed the majority rule without discussion,[13] and we are not disposed to depart therefrom. This assignment of error is denied.

■ Finally, we consider the point that the trial court erred in refusing defendant's motion to discharge the jury and declare a mistrial when, in closing argument, plaintiffs' counsel admonished the jury, "Don't let Mr. Shortridge and Mr. Tudor (defendant's attorneys) call their client and say, 'We have done it again.'" With defendant seated in the courtroom and no suggestion that he had been engaged in any previous litigation, the plain and obvious purpose of this stirring appeal was "to keep green before the minds of the jury" [Rytersky v. O'Brine, 335 Mo. 22, 28, 70 S.W. 2d 538, 540] the idea that the real defend-

ant was a liability insurance carrier. Although it seems that, in recent years, the tendency in this jurisdiction has been to speak softly of such improprieties, to wink at such transgressions, and to ignore ostrichlike the evils thereby foaled and fostered, the reports contain many ringing condemnations of, and many pointed warnings about, the oft-indulged practice of parading liability insurance coverage before juries.[14] We shall not extend this opinion by quotation or repetition of the verities so authoritatively announced and pungently put in the cited cases. Suffice it to say that, no matter which party is the offender [see Sherwood v. Arndt, Mo., 332 S.W.2d 891, 894–895, where *plaintiff* was granted a new trial], the condemned practice of injecting liability insurance coverage into jury trials is just as pernicious and reprehensible today as it was fifty years ago, for, as Mark Twain once said, "'(w)e are all full of human nature'" [Allen v. Wilkerson, Mo.App., 87 S.W.2d 1056, 1064] and the motivating emotions and besetting frailties of mankind do not change.

In their appellate brief, plaintiffs' counsel offer another "interpretation" of the

115 Vt. 23, 49 A.2d 415, 418(8); Parkhill Trucking Co. v. Hopper, 208 Okl. 429, 256 P.2d 810, 813(3); Flory v. New York Central Rd. Co., 170 Ohio St. 185, 163 N.E.2d 902, 906; Hoon v. Beaver Valley Traction Co., 204 Pa. 369, 54 A. 270, 271; Northern Pacific Ry. Co. v. Everett, 9 Cir., 232 F.2d 488, 494 (12). Some opinions specifically state that the parent's wages were shown, e. g., Immel v. Richards, 154 Ohio St. 52, 54, 93 N.E.2d 474, 476; Hahn v. Moore, 127 Ind.App. 149, 133 N.E.2d 900, 906, rehearing denied 134 N.E.2d 705; Zannelle v. Pettine, 51 R.I. 359, 155 A. 236, 238; Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659, 660.

12. Stratton v. Sioux Falls Traction System, 55 S.D. 464, 226 N.W. 644, 648; Luther v. Dornack, 179 Minn. 528, 229 N.W. 784; Robins v. Director General of Railroads, 207 Mich. 437, 174 N.W. 124, 125(1).

13. Brewer v. Rowe, supra, 252 S.W.2d loc. cit. 377, 379; Grogan v. Broadway

Foundry Co., 87 Mo. 321, 326(1); Nagel v. Missouri Pacific Ry. Co., 75 Mo. 653, 666; Stipetich v. Security Stove & Mfg. Co., Mo.App., 218 S.W. 964, 969; Kelly v. City of Higginsville, supra, 171 S.W. loc. cit. 970. See also Overholt v. Vieths, 93 Mo. 422, 6 S.W. 74, 75(3).

14. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 966–969; Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538; Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673; Boyne v. Schulte, Mo.App., 222 S.W.2d 503; Tramill v. Prater, 236 Mo.App. 757, 152 S.W.2d 684, 692–693; Page v. Unterreiner, Mo.App., 106 S.W. 2d 528, 537–538; Allen v. Wilkerson, Mo. App., 87 S.W.2d 1056, 1062–1064; Adams v. Carlo, Mo.App., 84 S.W.2d 682, 686– 688; Miller v. Harrison Const. Co., Mo. App., 298 S.W. 259; Pettit v. Goetz Sales Co., 221 Mo.App. 966, 281 S.W. 973; O'Hara v. Lamb Const. Co., Mo. App., 197 S.W. 163; Trent v. Lechtman Printing Co., 141 Mo.App. 437, 126 S.W. 238, 242–243; Gore v. Brockman, 138 Mo.App. 231, 119 S.W. 1082.

criticized argument, to-wit, that "jurors know * * * that a case is not finalized when a jury brings in its verdict," that "in fact this case is not finalized yet," and that "it may be that they (defendant's counsel) will have to call their client and tell him the result thereof after this court speaks." To us, the argument and its "interpretation" bear the same stamp of craft and cunning, and neither has any merit other than that of novelty and ingenuity. Counsel should not assume that even country appellate judges are so incredibly naive or innately stupid as to embrace such an "interpretation."

■ We are mindful of the fact that, upon defendant's objection to the argument, the court ruled that "the statement will be stricken out—the jury will disregard it" before denying the request for a mistrial, and we are cognizant of the holdings that the trial judge is invested with a considerable measure of discretion as to what action should be taken with respect to improper argument and that, where he has not regarded the transgression of counsel as of sufficient importance to grant a new trial, the appellate court is inclined to defer to his opinion. Davis v. Terminal Railroad Ass'n of St. Louis, Mo., 299 S.W.2d 460, 465(9); Hancock v. Crouch, Mo.App., 267 S.W.2d 36, 46(18). However, the argument under review was not retaliatory in nature [contrast Nelson v. O'Leary, Mo., 291 S.W.2d 142, 150(18)], and counsel seek no judicial grace on the theory that the quoted thrust was an inadvertent but harmless by-product of heated partisan advocacy by over-zealous counsel. On the contrary, the argument was made boldly and is defended brazenly as a proper one, with the tendered "interpretation" effectively negating any idea of inadvertence. We have no doubt but that the argument was grossly improper and wholly inexcusable. It was made intentionally and purposefully. Whether the mild and perfunctory ruling on defendant's objection could have cured the error is extremely doubtful. Faught v. Washam, Mo., 329 S.W.2d 588, 601; Rytersky v. O'Brine, supra, 70 S.W.2d loc. cit. 541(7). And, although we confess our inadequacy to probe the mental processes of counsel, we would be less than realistic if we did not recognize (without regard to the case before us) that sometimes counsel, encouraged by the demonstrated reluctance of courts to declare mistrials or grant new trials for improper argument, deliberately transcend the bounds of legitimate argument, conscious of the possibility that objection may be made and sustained, but smug in the knowledge that the objectionable matters may not be effectively withdrawn and that their poisonous influence may not be entirely neutralized. Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, 409; O'Hara v. Lamb Const. Co., Mo.App., 197 S.W. 163, 165; Trent v. Lechtman Printing Co., 141 Mo.App. 437, 126 S.W. 238, 243.

All of the foregoing would lead naturally and logically to the conclusion that, where, as here, counsel have chosen deliberately to pollute and poison the stream of justice, imposition of the drastic, but only effectual, remedy of setting aside the verdict should be imposed. Compare Chowning v. Parker, 104 Mo.App. 674, 78 S.W. 677. And, in the even-handed administration of justice we would not hesitate so to act in the case at bar, but for one further facet of the record presented, namely, that during the taking of testimony the stream already had been polluted to some extent by defendant's statement that he thought that "the insurance company" had taken certain pictures in evidence. Although that evidence pertaining to insurance coverage was not extensive and the subsequent argument of plaintiffs' counsel did not purport to refer thereto [contrast Moss v. Mindlin's, Inc., Mo., 301 S.W.2d 761, 765], the fact that defendant had mentioned the matter of insurance prior to the closing arguments leaves us, upon reflection, unable to say confidently that the objectionable argument, in and of itself, materially and prejudicially affected the merits. V.A.M.S. § 512.160, subd. 2. For that reason alone, we do not

set aside the judgment and grant a new trial on account of the argument under review.

Our detailed study of this case has impelled the conclusion that the judgment for plaintiffs must be affirmed. It is so ordered.

McDOWELL and RUARK, JJ., concur.